YOUNG, C.J.
Plaintiff was a passenger on a bus operated by the Suburban Mobility Authority for Regional Transportation (SMART) when the bus was involved in an accident. Plaintiff filed an application for *710 no-fault benefits with SMART’S insurer soon thereafter, but waited more than seven months to notify SMART that she might pursue liability in tort. SMART moved for partial summary disposition, arguing that the notice provision of the Metropolitan Transportation Authorities Act, MCL 124.419, required notice of plaintiffs tort claims within 60 days of the accident as a condition precedent to maintaining those claims. The circuit court granted SMART partial summary disposition, but the Court of Appeals reversed.
MCL 124.419 requires that a plaintiff who wishes to bring a claim for injury to person or property arising out of an incident with a common carrier like SMART must provide notice of the claim to the transportation authority within 60 days. Statutory notice requirements must be interpreted and enforced as plainly written. Thus, we hold that notice of plaintiffs application for no-fault insurance benefits, even when supplemented with SMART’S presumed “institutional knowledge” of the underlying facts of the injury, does not constitute written notice of a third-party tort claim against SMART sufficient to comply with MCL 124.419. The provisions of MCL 124.419 apply to “ordinary claims” that arise in connection with a common carrier, and the 60-day notice requirement pertains to such claims for personal injury or property damage. An ordinary claim against a common carrier does not include claims made for first-party no-fault benefits. Those no-fault claims are not ordinary tort claims, but a statutory benefit permitted in lieu of tort remedies. Thus, the statutory notice provision does not apply to no-fault claims, and an application for first-party no-fault benefits does not satisfy the statutory requirement to provide the transportation authority notice of a plaintiffs intent to pursue a third-party tort claim. Nor does a common carrier’s presumed institutional knowledge of an injury or *711 occurrence relieve a claimant of the obligation to give the formal notice required by the statute.
The judgment of the Court of Appeals is reversed.
I. FACTS AND PROCEDURAL HISTORY
On September 15, 2006, plaintiff, Vivian Atkins, was a passenger on a SMART bus when it collided with another SMART bus. SMART immediately investigated the accident at the scene, but plaintiff did not believe that she had sustained any serious injuries and did not stay for the investigation. However, approximately 10 days after the accident, plaintiff contacted ASU Group, SMART’S no-fault claims representative, and advised that she had been injured in the accident. ASU sent plaintiff an application for no-fault benefits, which she completed and returned to ASU. Plaintiff identified her medical providers and described injuries to her shoulders, stomach, and back.
SMART, through its insurer, began paying plaintiff first-party, no-fault benefits. While paying benefits, SMART received updates on plaintiffs condition, including a physician’s report. SMART also became aware that plaintiff was on a short leave of absence from work beginning on October 30, 2006, and that plaintiffs mother and daughter were performing some household services for plaintiff. Unfortunately, plaintiffs condition continued to worsen, and an MRI revealed disk herniations and degenerative changes in her spine. Through her attorney, plaintiff sent a letter to SMART on May 4, 2007, notifying that entity of her intent to pursue tort claims arising out of the accident.
On August 7, 2007, plaintiff filed a complaint against SMART, alleging third-party claims for negligence resulting in a serious impairment of body function, negligent entrustment, and respondeat superior, as well as *712 a claim for first-party no-fault benefits. SMART moved for summary disposition with respect to the tort claims, alleging that plaintiff had failed to give notice of her tort claims as prescribed by MCL 124.419, which provides in relevant part:
All claims that may arise in connection with the transportation authority shall be presented as ordinary claims against a common carrier of passengers for hire: Provided, That written notice of any claim based upon injury to persons or property shall be served upon the authority no later than 60 days from the occurrence through which such injury is sustained....
The Wayne Circuit Court held that plaintiff had given notice of injury, but had failed to give notice of her tort claims within 60 days as required by the statute. The court thus granted summary disposition to SMART on the tort claims.
The Court of Appeals reversed, reasoning that SMART’S knowledge of plaintiffs no-fault claim and the aggregate information that plaintiff had provided to SMART and its insurer were sufficient to give SMART written notice of a third-party tort claim.[1] The Court observed that MCL 124.419 does not “delineate between notice of a claim for first-party no-fault benefits and notice of a third-party tort claim.”[2] The Court thus reasoned that this provision only requires notice of “a” claim, which it defined as the aggregate of operative facts giving rise to an enforceable right.[3] As a result, reasoned the Court of Appeals, the statute only requires notice without any additional specific requirements of *713 what information must be included.[4] On the basis of this analysis, the Court concluded that SMART had sufficient notice of plaintiffs tort claim within the 60-day period:
Defendant.. . had timely notice that plaintiff was injured, and it knew that, 60 days after the accident, she continued to require medical treatment, provision of household services, and restriction from work. While plaintiff had no proof that she had suffered permanent disfigurement or serious impairment of body function, by the expiration of the 60-day period, defendant had notice of the operative facts needed to anticipate plaintiffs tort claim, and plaintiff had demanded payment for her injuries. The statute does not require a defendant to know what legal theory a plaintiff will pursue, only that it have notice of facts giving rise to a right to seek damages or payment. Therefore, we hold that the information defendant had before the expiration of the 60-day period was sufficient to provide written notice of plaintiffs third-party claim.[5]
Finally, the Court of Appeals qualified its conclusion, noting that not all no-fault claims would constitute notice of a tort claim:
For example, if the plaintiffs injury was something that apparently would be quickly resolved (like an abrasion or bruise), or if the circumstances of the accident were such that there was no apparent negligence by the defendant (such as a hit-and-run driver running into the defendant’s vehicle), a defendant would not necessarily have notice that a tort claim would follow. For this reason, defendant is correct in its argument that merely having notice of the accident is insufficient. But here, defendant had notice of all the facts that would support plaintiff’s third-party claim.[6]
*714 SMART applied for leave to appeal in this Court. We ordered arguments on SMART’S application, directing the parties to consider “whether written notice of the plaintiffs no-fault claim, together with SMART’S knowledge of facts that could give rise to a tort claim by the plaintiff, constituted written notice of her tort claim sufficient to comply with MCL 124.419. ”[7]
II. STANDARD OF REVIEW
This Court reviews de novo the grant or denial of summary disposition motions.[8] This case calls on us to consider the statutory notice provision of MCL 124.419. Matters of statutory interpretation are also reviewed de novo.[9]
III. ANALYSIS
Generally, governmental agencies in Michigan are statutorily immune from tort liability.[10] However, because the government may voluntarily subject itself to liability, it may also place conditions or limitations on the liability imposed.[11] Statutory notice provisions are a common means by which the government regulates the conditions under which a person may sue governmental entities. It is well established that statutory notice requirements must be interpreted and enforced as *715 plainly written and that no judicially created saving construction is permitted to avoid a clear statutory mandate.[12]
The Metropolitan Transportation Authorities Act describes in what manner liability may be imposed on a transportation authority for situations involving the operation of a common carrier for hire. It includes a notice provision, MCL 124.419, which provides in full:
All claims that may arise in connection with the transportation authority shall be presented as ordinary claims against a common carrier of passengers for hire: Provided, That written notice of any claim based upon injury to persons or property shall be served upon the authority no later than 60 days from the occurrence through which such injury is sustained and the disposition thereof shall rest in the discretion of the authority and all claims that may be allowed and final judgment obtained shall be liquidated from funds of the authority: Provided, further, That only the courts situated in the counties in which the authority principally carries on its function are the proper counties in which to commence and try action against the authority.[13]
MCL 124.419 thus provides that claims may be brought against a transportation authority in derogation of governmental immunity and requires that those claims be presented as “ordinary claims” against the common carrier involved. The statute then imposes certain statutory restrictions on the resultant suits against common carriers. First, when the claim involves injury to person or property, the statute requires written notice of the claim to be served within 60 days of the injury. The statute further provides that any judgment obtained is payable from funds of the authority and *716 restricts jurisdiction to courts in the counties where the authority carries on its function.
At issue in this case is whether an application for no-fault benefits can suffice as the notice of a separate tort claim that MCL 124.419 requires. Our primary objective when interpreting a statute is to discern the Legislature’s intent. “This task begins by examining the language of the statute itself. The words of a statute provide ‘the most reliable evidence of its intent. . . .’ ”[14] When the Legislature has clearly expressed its intent in the language of the statute, no further construction is required or permitted.[15]
The Court of Appeals held that plaintiffs no-fault application and her communications with SMART or its insurer provided SMART with sufficient knowledge to anticipate plaintiffs tort claim, and thus sufficed as the notice required to satisfy the statute. We disagree. MCL 124.419 plainly requires “written notice” of any “ordinary claims” for personal injury within 60 days of the underlying occurrence, and the ordinary claims that may be brought pursuant to the statute are qualitatively different from a demand for no-fault benefits paid by a common carrier’s insurer. Accordingly, the demand for no-fault benefits and other communications with SMART or its insurer did not satisfy the “written notice” requirement with respect to plaintiffs ordinary claims.
The text of MCL 124.419 indicates that its provisions pertain only to ordinary claims brought against a transportation authority. In order to effectuate the Legislature’s purpose, we interpret statutes cohesively, and we *717 read specific statutory provisions in the context of that which surrounds them.[16] The prefatory clause of MCL 124.419 states that “[a]ll claims that may arise in connection with the transportation authority shall be presented as ordinary claims.” The statute then provides the specific limitation that “any claim based upon injury to persons or property” must be made within 60 days of the underlying occurrence. The reference to “any claim” is part of the same sentence as the prior language discussing “ordinary claims,” and it most naturally reads as modifying “ordinary claims.” Accordingly, the 60-day limitation of MCL 124.419 applies to “any” ordinary claims brought against the transportation authority that arise out of injury to persons or property.
While the term “ordinary claims” is undefined by statute, it may reasonably be understood to include traditional tort claims arising out of occurrences involving a common carrier through which such injury is sustained.[17] This understanding corresponds with the purpose of the statute: to set forth the requirements by which a person may recover against a common carrier for its liabilities, which includes tort liabilities involving injury to persons or property. We also discern from the statutory text that these ordinary claims are to be paid from funds of the authority.
Contrary to this framework, an application for no-fault benefits is not an ordinary claim as contemplated by MCL 124.419. A claim for no-fault benefits is not a tort claim, nor is it comparable to one. In fact, no-fault systems are generally designed to supplant tort recov *718 ery in most situations. Moreover, claims for no-fault benefits are not paid from funds of the authority, as traditional tort claims are, but are paid by a carrier’s no-fault insurer. The legislatively chosen language thus indicates that ordinary tort claims like those pursued by plaintiff here and to which MCL 124.419 applies are distinct from claims for other kinds of benefits, such as those provided by the no-fault act.
Apart from the textual indications supporting this analysis, we recognize that claims for first-party no-fault benefits and third-party tort benefits are qualitatively distinct in nature, such that notice of one does not serve as notice of the other. Most notably, an application for first-party insurance benefits recoverable without regard to fault cannot be equated with a claim for at-fault tort liability. First-party benefits under the no-fault act are creations of, and thus only available pursuant to, statutory law. And SMART’S insurer is required to pay no-fault personal protection insurance benefits to individuals injured in accidents involving their buses.[18] A person who proves his entitlement to first-party benefits has proved none of the elements that would entitle him to tort damages. A third-party tort claim is distinct from a claim for first-party benefits because a third-party tort claim involves an adversarial process in which the plaintiff must prove fault in order to recover. Therefore, notice of a claim for first-party benefits is not the equivalent of notice of a third-party tort claim.[19]
The decision of the Court of Appeals in Trent v Suburban Mobility Auth for Regional Transp is instructive. In Trent, the Court of Appeals examined whether *719 a claimant seeking first-party no-fault benefits was required to meet the 60-day notice requirement of MCL 124.419. The Court held that MCL 124.419 does not apply to claims for no-fault benefits, but does apply to third-party claims for personal injury.[20] The Court reasoned that MCL 124.419 contemplates claims brought as “ordinary claims against a common carrier,” whereas a no-fault claim is statutory and unrelated to SMART’S status as a common carrier. Thus, the plaintiff in Trent did not have to provide notice of her no-fault claim within 60 days under MCL 124.419 to be entitled to no-fault benefits because the statute was inapplicable to that type of benefit sought.[21]
Trent appropriately held that the 60-day window to file notice of an ordinary claim in MCL 124.419 does not apply or limit a plaintiffs ability to bring a no-fault claim for benefits. While this case presents the converse factual situation in which plaintiff argues that notice of a no-fault claim is sufficient to apprise a defendant of the required statutory notice of a tort claim, the legal principle remains the same: no-fault claims and fault-based tort claims are qualitatively different. Thus, in Trent, a requirement that applies to ordinary tort claims did not apply to a claim for no-fault benefits, and *720 here, a request for no-fault benefits does not apprise the defendant of the desire to pursue liability in tort.
The Court of Appeals erred to the extent that it held that plaintiffs no-fault claim and SMART’S institutional knowledge essentially put SMART on notice of a likely at-fault claim. Ultimately, plaintiffs application for no-fault benefits in this case only asserted her right to, and demanded payment for, no-fault benefits. Plaintiff did not assert any right to recovery in tort or make a demand for tort damages within 60 days. The claim asserted in plaintiffs application for no-fault benefits was qualitatively different from a claim for recovery in tort and could not reasonably apprise SMART that plaintiff would pursue a tort action. Plaintiffs interpretation, and that of the Court of Appeals, essentially rewrites the statutory text to provide that notice of any one claim — however distinct — suffices as notice of any other claim that plaintiff may pursue even when the statute plainly requires “written notice of any claim.”
Further, the Court of Appeals compounded this error by importing concepts of substantial compliance and SMART’S institutional knowledge of the accident gleaned from other sources as sufficient to provide the notice required by MCL 124.419. The statute requires “written notice” of “claims,” which must be “served” upon SMART. A “claim” is “a demand for something as due; an assertion of a right or an alleged right.”[22] A claim is not merely an occurrence; it is a demand for payment pursuant to a legal right as a result of that occurrence.[23] The statute does not permit knowledge of facts that could give rise to a claim, as the Court of Appeals held, but rather it requires written notice of the claim itself. Knowledge of operative facts is not *721 equivalent to written notice of a claim. Similarly, aggregate knowledge of an event such as an accident cannot be served on a defendant. Instead, the requirement that “written notice of any claim . . . shall be served upon the authority” indicates that a formal delivery of notice of the claim is intended by the statutory language.[24]
By providing that the accumulated information obtained by SMART from other sources, in addition to a no-fault application, substantially met the requirement that plaintiff provide written notice of her tort claims, the Court of Appeals replaced a simple and clear statutory test with a test based on apparent or imputed knowledge. The Court of Appeals’ holding would require SMART and its counterparts to anticipate when a tort claim is likely to be filed on the basis of the underlying facts. In short, it would require a governmental agency to divine the intentions of an injured or potentially injured person and then notify itself that the person may file a suit in tort. This approach entirely subverts the notice process instituted by the Legislature. And the legislative purpose behind this process is clear: it requires specific statutory notice of any claim so that a common carrier defendant does not have to anticipate or guess whether a claim will be filed at some point in the future. Instead, the common carrier must simply be told of the claim within 60 days and through service of a notice. For these reasons, the decision of the Court of Appeals contravenes the clear language of MCL 124.419 and must be reversed.[25]
*722 IV CONCLUSION
Statutory notice requirements like the one at issue in this case must be interpreted and enforced as plainly written. The Legislature has determined that it will waive governmental immunity in cases of personal injury or property damage that occur in connection with a common carrier of passengers for hire only when written notice of the claim is served on the transportation authority within 60 days. Our opinion today enforces that legislative determination.
Because plaintiff did not comply with the notice requirement provided in MCL 124.419, that statute precludes her from maintaining her tort claims against SMART. Plaintiffs accident occurred on September 15, 2006. Plaintiff thus had 60 days, or until November 14, 2006, to serve notice of her tort claims on SMART. Plaintiff first raised her tort claims in a letter from her counsel sent to SMART on May 4, 2007. Thus, MCL 124.419 precludes her from maintaining those claims against SMART. Accordingly, we reverse the judgment of the Court of Appeals and remand this case for reentry *723 of the circuit court’s order granting partial summary disposition in favor of SMART.
Markman, Mary Beth Kelly, and Zahra, JJ., concurred with Young, C.J.

 Atkins v Suburban Mobility Auth for Regional Transp, unpublished opinion per curiam of the Court of Appeals, issued October 22, 2009 (Docket No. 288461), p 3.

 Id. at 2.

 Id. at 2-3.

 Id.

 Id. at 3.

 Id. (emphasis added).

 Atkins v SMART, 489 Mich 958 (2011).

 Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 202; 731 NW2d 41 (2007).

 Id.

 See generally MCL 691.1401 et seq.; Rowland, 477 Mich at 202-203.

 See Moulter v Grand Rapids, 155 Mich 165, 168-169; 118 NW 919 (1908) (“It being optional with the legislature whether it would confer upon persons injured a right of action therefor or leave them remediless, it could attach to the right conferred any limitations it chose.”); accord Rowland, 477 Mich at 212.

 See Rowland, 477 Mich at 211; see also McCahan v Brennan, 492 Mich 730; 822 NW2d 747 (2012).

 Emphasis added.

 Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

 Sun Valley, 460 Mich at 236.

 Herman v Berrien Co, 481 Mich 352, 366; 750 NW2d 570 (2008); Sun Valley, 460 Mich at 236-237.

 See, e.g., Trent v Suburban Mobility Auth for Regional Transp, 252 Mich App 247; 651 NW2d 171 (2002), discussed later in this opinion.

 See MCL 500.3105(1).

 Not even the dissent here disagrees with this construction and conclusion.

 Trent, 252 Mich App at 251-252.

 While we cite Trent with approval in this regard, we specifically disavow the additional holding of Trent that a defendant must show actual prejudice in order to enforce a statutory notice provision. This Court has since held that when the Legislature specifically qualifies the ability to bring a claim against the state or its subdivisions on a plaintiffs meeting certain requirements that the plaintiff fails to meet, no saving construction — such as requiring a defendant to prove actual prejudice — is allowed, and overruled the contrary cases on which Trent relied in this regard. See Rowland, 477 Mich at 201; see also McCahan, 492 Mich at 733, 746-747 (reaffirming the principle of Rowland and clarifying that it applies to other similar statutory notice provisions). Of course, this principle applies with equal force here.

 Random House Webster’s College Dictionary (2000).

 Black’s Law Dictionary (8th ed).

 Emphasis added. See Nuculovic v Hill, 287 Mich App 58, 68; 783 NW2d 124 (2010).

 The dissent’s argument here is precisely the same as the one made by the dissenting justice in McCahan, 492 Mich at 753-757, 759-761 (MARILYN Kelly, J., dissenting), which itself substantively repeats the arguments made by the dissent in Rowland, 477 Mich at 248 (Marilyn Kelly, J., concurring in part and dissenting in part). In short, the dissent *722 primarily disagrees with this Court’s decision to enforce the language of MCL 124.419 and, in particular, the Legislature’s designated consequence for failure to comply with the statutory notice requirement. Oddly, although this case is one of statutory construction, the dissent undertakes no effort whatsoever to interpret the actual words of the statute that we are charged with interpreting. Instead, once again the dissent relies on a nonexistent, often repudiated “judicial prejudice requirement” to avoid the effect of the statutory language. Rather than repetitively restating yet again that which has already been authoritatively explored in decisions of this Court, for a full discussion of these issues we refer to, and incorporate by reference, this Court’s prior opinions repudiating the various arguments raised by the dissent. See McCahan, 492 Mich at 747-751; Rowland, 477 Mich at 202-214. In accordance with these decisions, we continue to advance the simple constitutional notion that this Court lacks the authority to rewrite statutory language or otherwise avoid by judicial innovation the Legislature’s dictates.