*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAROLD T. SULLIVAN, Personal Representative
of the ESTATE OF INDIA D. SULLIVAN,

       Plaintiff-Appellant,

v

BRETT MATTHEW STILES and THE CITY OF
DETROIT,

       Defendants-Appellees
and

DETROIT FIRE DEPARTMENT,

       Defendant.

UNPUBLISHED
November 21, 2023

No. 361624
Wayne Circuit Court
LC No. 20-002329-NI

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Plaintiff, Harold T. Sullivan, as personal representative of the Estate of India D. Sullivan, appeals as of right the order granting defendant, city of Detroit's (the City), motion for summary disposition under MCR 2.116(C)(7) (claim barred by immunity) and 2.116(C)(10) (no genuine issue of material fact). For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises from a fatal motor vehicle accident between a fire truck and India Sullivan's vehicle. On the morning of the accident, the Detroit Fire Department (the DFD) had dispatched three fire trucks to respond to an emergency call regarding a house fire. The DFD fire trucks were traveling west on 7 Mile Road, which is a four-lane road with two lanes for each direction. As the fire trucks approached the intersection with Huntington Street, India Sullivan had stopped the car she was driving in the leftmost westbound lane. There were other vehicles stopped in front of Sullivan's car and to the right of her car preventing her from pulling over any

further to the right. The oncoming traffic had pulled over and stopped on the south side of the road, creating a clear path in the oncoming eastbound lane that was closest to the double center line. As a result, the lead fire truck merged into the eastbound lanes of 7 Mile Road and passed Sullivan without incident. DFD firefighter Brett Stiles was driving the second DFD fire truck and attempted to follow behind the lead truck into the eastbound lane of 7 Mile Road. There was testimony that Stiles's fire truck had its lights and sirens activated and made audible warnings with the air horn as it approached Sullivan's car. Stiles estimated that he was approximately 5 to 10 seconds behind the first fire truck.

Stiles testified that Sullivan made a sudden left turn in front of his fire truck as he passed Sullivan's car on the left, and the fire truck collided with Sullivan's vehicle. Sullivan suffered serious injuries, fell into a coma as a result of surgical complications, and later died.

Plaintiff, who was Sullivan's husband and the personal representative of her estate, initially brought suit against Stiles, the City, and the DFD. Plaintiff subsequently filed an amended complaint against the City only, alleging that Stiles, as an employee of the City, "operated the fire truck inconsistent with the safety of the public" in violation of MCL 257.653(2), MCL 257.603, and MCL 257.632. Plaintiff claimed that Sullivan "suffered catastrophic injuries within the contemplation of the Michigan No-Fault Act ultimately resulting in her death" and that the City was vicariously liable for the negligence of Stiles under MCL 691.1405. The City generally denied liability and asserted various affirmative defenses including, as relevant here, that plaintiff's claims were barred pursuant to the governmental tort liability act, MCL 691.1401 *et seq*., and that Sullivan's injuries were the result of her own negligence.

The City subsequently moved for summary disposition under MCR 2.116(C)(7) and (C)(10). The City acknowledged that, pursuant to MCL 691.1405, governmental agencies are liable for bodily injury and property damage resulting from an employee's negligent operation of a government-owned motor vehicle. However, the City argued that although there was record evidence suggesting that the accident might have been prevented had Stiles done some things differently, there was no other evidence that Stiles was negligent or that any alleged negligence by Stiles was the proximate cause of Sullivan's injuries considering Sullivan's failure to yield the right of way to an emergency vehicle with its lights and siren activated. The City further argued that summary disposition was appropriate because there was no genuine issue of material fact that Sullivan was more than 50% at fault in causing the accident and plaintiff was therefore prohibited from recovering damages pursuant to MCL 500.3135.

Plaintiff opposed the City's motion for summary disposition, arguing that there were questions of fact whether Stiles was negligent in operating the fire truck. Plaintiff also argued that the issues of comparative fault and proximate causation should be assessed by the trier of fact and should not be determined as a matter of law.

The parties submitted deposition testimony and documentary evidence with their respective summary disposition briefs. Stiles testified during his deposition that the horn, lights, and siren were activated as he drove into the oncoming lane of traffic to pass Sullivan's car and that he did not see Sullivan's left turn signal engaged before passing her. Although the traffic crash report indicated that Sullivan's left turn signal was activated, Stiles did not recall reporting that fact. Stiles also did not remember how fast he was driving, but he stated that "[w]e were just

coming around a corner and I was still accelerating and I was not going overly fast." He agreed that he could have been traveling approximately 44 miles per hour as stated in one of the reports. The record indicates that the posted speed limit was 35 miles per hour. Stiles stated that because Sullivan had pulled over, essentially come to a stop,[1] and was behaving in the same manner as the surrounding traffic, he believed Sullivan had given him permission to pass her.

Lieutenant Richard Halsell,[2] who was riding in the passenger seat of the fire truck Stiles was driving, testified at his deposition that the brake lights of Sullivan's car were activated as they approached in the fire truck and they proceeded to follow the first fire truck to pass Sullivan on the left since she appeared to be stopped. According to Lieutenant Halsell, Sullivan turned left as he and Stiles were passing. Regarding Sullivan's turn signal, Lieutenant Halsell stated: "It was all at the same time; turn signal, the turning, the accident, everything." Lieutenant Halsell also testified that Stiles applied the fire truck's brakes "[a]t the point of impact," but he was unsure whether Stiles was braking before then. Lieutenant Halsell stated: "There was no time to alert Mr. Stiles [that Sullivan was turning]. It was instantaneous and her—everything was instantaneous."

The City's expert, Collision Reconstructionist Timothy Abbo, prepared a report regarding the accident in which he concluded that Sullivan was the sole cause of the accident. Abbo calculated that the fire truck was traveling between 44 and 53 miles per hour and that Sullivan's car took approximately 2.3 to 2.8 seconds to make its left turn and reach the point of impact. Abbo opined—based on his additional calculations involving the distance between the fire truck and Sullivan's car when Sullivan began to turn, average human perception-response time, and the fire truck's deceleration rate—that it was unlikely that Stiles could have avoided the collision. Abbo further opined that Sullivan violated her obligation to remain stopped until all emergency vehicles had passed.

Plaintiff's expert, Crash Reconstructionist Marc Edgcombe, offered these relevant opinions regarding the crash during his deposition: (1) "Mr. Stiles['s] speed prior to impact was approximately 48 miles an hour with the post-impact speed of approximately 42 miles an hour"; (2) "the fire truck driven by Mr. Stiles went left of center and was traveling in the opposite lane of traffic without reducing its speed contrary to industry standard best practices . . ."; (3) "Mr. Halsell . . . was aware of [Sullivan's] left blinker but did not suggest that Mr. Stiles decrease in speed or even [make] him aware of the potential hazard" and that it was "not realistic" for the turn signal to have been engaged simultaneously with the accident; (4) the accident would not have occurred had Sullivan not violated her duty to stay put while Stiles was passing; (5) "had Mr. Stiles been covering the brake as he proceeded into the oncoming lane his reaction time would have been reduced and the likelihood of a collision across all scenarios decreases"; (6) had Stiles been traveling the speed limit or reduced his speed to 32 to 40 miles per hour 205 to 256 feet before impact, the collision would have been avoided; and (7) had Stiles operated the fire truck consistent with industry regulations and recommendations, the crash would have been avoided.

---

[1] Stiles acknowledged it was possible that Sullivan may have been moving slowly forward at less than 5 miles per hour.

[2] At the time of the accident, Halsell was a sergeant.

DFD Chief Alfie Green, the DFD supervisor of training, testified that although emergency vehicles were granted certain exemptions from the ordinary rules of the road under certain circumstances, firefighters were trained to understand that it was still necessary to exercise "due regard" for the safety of others while operating these vehicles and responding to emergencies. Chief Green defined "due regard" as the "things . . . a normal person would do[,] . . . [taking] into account the things that are around you when you're making your decisions." Chief Green affirmed that if a fire truck driver gets into an accident, it is likely because the driver was not exercising due regard.

According to Chief Green, standard driver operating procedures that conform with the exercise of due regard include, in relevant part: (1) cautiously moving into the opposing lane of traffic to proceed through an intersection at an extremely reduced speed when the road is blocked in the normal direction of travel; (2) placing the foot over the brake when driving through an intersection to reduce response time; (3) never assuming the fire truck has the right-of-way even when the lights and siren are engaged, but instead obtaining acknowledgment from surrounding drivers before proceeding; (4) avoiding exceeding the speed limit during an emergency response and never exceeding the speed that is reasonable for the conditions; (5) never assuming civilian drivers will act appropriately in response to emergency vehicles; and (6) needing to plan for drivers with their turn signals engaged to anticipate that they may unexpectedly turn.

In his affidavit, Emergency Vehicle Operations and Driver Training expert Mike Wierenga stated that he reviewed the DFD training manual, Stiles's driving certifications, employment file and deposition, and the deposition of Chief Green. Based on these materials, Wierenga concluded, in relevant part:

> 6. I am of the opinion that Brett Stiles failed to exercise due regard for public safety in the operation of the apparatus as was required of him by the Detroit Fire Department training, policies and procedures, common emergency operator driving practices, and MCL 257.653.
>
> 7. I am further of the opinion that Brett Stiles failed to reduce the speed of the apparatus he was operating before crossing the centerline to proceed through an intersection as was required of him, and instead was accelerating as he attempted to pass Ms. Sullivan on the left.
>
> 8. I am also of the opinion that Brett Stiles failed to act in accordance with his training and recognized guidelines by failing to appreciate the increased risk of collisions occurring at an intersection and not employing defensive driving techniques to appropriately manage that increased risk.
>
> 9. I am also of the opinion that Brett Stiles failed to ensure a clear path before crossing the center line to proceed through the subject intersection.
>
> 10. I am also of the opinion that Brett Stiles failed to appreciate the likelihood of civilian confusion and unexpected or unexplained civilian behavior when encountering an emergency vehicle or vehicles at or near an intersection and

to employ the appropriate defensive driving techniques necessary to exercise due regard for public safety as was required of him.

The trial court granted the City's motion for summary disposition under MCR 2.116(C)(7) and (C)(10). The trial court found plaintiff's claim was barred by governmental immunity under MCL 691.1405 because there was no genuine issue of material fact Stiles was not negligent. The trial court also found there was no genuine issue of material fact Sullivan was more than 50% at fault for the accident, having violated MCL 257.653 by failing to yield the right-of-way to the fire truck driven by Stiles, and that recovery was therefore precluded by MCL 500.3135. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition, and the applicability of governmental immunity, are reviewed de novo on appeal. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012). Summary disposition is appropriate under MCR 2.116(C)(7) when immunity is granted by law. MCR 2.116(C)(7); see also *Maiden v Rozwood*, 461 Mich 109, 118 n 3; 597 NW2d 817 (1999). "In reviewing a ruling pursuant to subrule (C)(7), '[w]e consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.' " *Seldon*, 297 Mich App at 432-433 (citation omitted; alteration in original).

> If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred [by governmental immunity] is an issue of law for the court. *But* if a question of fact exists so that factual development could provide a basis for recovery, caselaw states that dismissal without further factual development is inappropriate. [*Dextrom v Wexford County*, 287 Mich App 406, 431; 789 NW2d 211 (2010) (citation omitted).]

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120.]

## III. GOVERNMENTAL IMMUNITY

Plaintiff argues the trial court improperly granted the City's motion for summary disposition because: (1) the trial court improperly conflated the question of whether Stiles was negligent with the question of whether the motor vehicle exception to governmental immunity applied; and (2) there is a genuine issue of material fact whether Stiles was negligent.

Generally, unless an exception applies, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental

function." MCL 691.1407(1); see also *Atkins v Suburban Mobility Auth for Regional Transp*, 492 Mich 707, 714; 822 NW2d 522 (2012). Under what is typically referred to as the motor vehicle exception, "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the *negligent operation* by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405 (emphasis added). This Court has explained that under MCL 691.1405, a governmental agency is liable "only if plaintiff's injuries resulted from 'the negligent operation' of a motor vehicle." *Seldon*, 297 Mich App at 436.

Exceptions to governmental immunity should be construed narrowly. *Robinson v City of Detroit*, 462 Mich 439, 455; 613 NW2d 307 (2000). "In order to establish a prima facie negligence claim, a plaintiff must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Seldon*, 297 Mich App at 433. The violation of a statute may establish a prima facie case from which an inference of negligence may be drawn. *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 487-488; 478 NW2d 914 (1991) ("Violation of a statute by a plaintiff or a defendant creates a prima facie case from which a jury may draw an inference of negligence.").

Three statutory provisions are relevant in this case. First, MCL 257.603 provides in relevant part as follows:

> (2) The driver of an authorized emergency vehicle when responding to an emergency call, but not while returning from an emergency call, or when pursuing or apprehending a person who has violated or is violating the law or is charged with or suspected of violating the law may exercise the privileges set forth in this section, subject to the conditions of this section.

> (3) The driver of an authorized emergency vehicle may do any of the following:

> (a) Park or stand, irrespective of this act.

> (b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

> (c) Exceed the prima facie speed limits so long as he or she does not endanger life or property.

> (d) Disregard regulations governing direction of movement or turning in a specified direction.

> (4) The exemptions granted in this section to an authorized emergency vehicle apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary, except as provided in subsection (5), and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc . . . .

Next, MCL 257.632 states, in relevant part:

The speed limitation set forth in this chapter *shall not apply to vehicles when operated with due regard for safety* under the direction of the police when traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation, nor *to fire department or fire patrol vehicles when traveling in response to a fire alarm*, nor to public or private ambulances when traveling in emergencies. This exemption shall apply only when the driver of the vehicle while in motion *sounds an audible signal by bell, siren or exhaust whistle* as may be reasonably necessary . . ., unless the nature of the mission requires that a law enforcement officer travel without giving warning to suspected law violators. *This exemption shall not however protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others*. [Emphasis added.]

Finally, MCL 257.653 states, in relevant part:

(1) Upon the immediate approach of an authorized emergency vehicle equipped with not less than 1 lighted flashing, rotating, or oscillating lamp exhibiting a red or blue light visible under normal atmospheric condition from a distance of 500 feet to the front of the vehicle and when the driver is giving audible signal by siren, exhaust whistle, or bell:

(a) The driver of another vehicle shall yield the right-of-way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway, clear of an intersection, and shall stop and remain in that position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

(b) The operator of a streetcar shall immediately stop the car, clear of an intersection, and shall keep it in that position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

(2) *This section does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of persons using the highway.*

(3) A person who violates this section is responsible for a civil infraction. [Emphasis added.]

Thus, emergency vehicle drivers may be excused from certain ordinary rules of the road under some circumstances, but emergency vehicle drivers nonetheless retain a duty of exercising due regard for the safety of others. MCL 257.603; MCL 257.632; MCL 257.653(2); see also generally *City of Kalamazoo v Priest*, 331 Mich 43, 45-48; 49 NW2d 52 (1951).

Here, there was evidence that the lights, sirens, and horns on Stiles's fire truck were operating at the time of the accident. Nonetheless, Chief Green testified that a fire truck driver responding to an emergency exercises due regard when: (1) the driver avoids exceeding the posted

speed limit; (2) in situations where all lanes of traffic in the same direction as the responding fire truck are blocked, the driver moves the apparatus into the opposing lane of traffic and proceeds through the intersection at an extremely reduced speed; (3) the driver places his foot on the brake pedal when approaching intersections; (4) the driver does not assume the fire truck has the right-of-way, and obtains acknowledgment from surrounding drivers before proceeding; and (5) the driver plans for civilian drivers with their turn signals engaged to anticipate that they may unexpectedly turn.

Stiles stated, before he crashed into Sullivan, he was "still accelerating and . . . not going overly fast." Although the speed limit was 35 miles per hour, the City's expert, Collision Reconstructionist Abbo, estimated Stiles was driving between 44 and 53 miles per hour. Plaintiff's expert, Crash Reconstructionist Edgcombe, estimated Stiles's speed at the time of the crash was about 48 miles per hour. DFD Lieutenant Halsell, the passenger in Stiles's fire truck, stated Stiles applied the fire truck's brakes "[a]t the point of impact," but was unsure whether he was braking before then. Edgcombe opined that Stiles could have reduced the chances of an accident by covering the brake before proceeding into the oncoming lane of traffic. Stiles stated the oncoming lane of traffic was clear before he crossed the center line to pass Sullivan, and because Sullivan had pulled over, came to a stop, and was behaving in the same manner as the surrounding traffic, he believed Sullivan had given him permission to pass her. There was conflicting evidence regarding the point at which Sullivan engaged her left turn signal.

Applying these facts to the due care requirements as explained by Chief Green, there is a genuine issue of material fact whether Stiles was driving with the statutorily required due care, and thus, negligently operating the fire truck. Stiles was speeding at the time of the accident by 8 to 18 miles per hour despite the training for fire truck drivers in emergencies to maintain a reasonable speed and to significantly reduce speeds and cover the brakes when approaching intersections and passing vehicles in the oncoming lane of traffic. There were conflicting expert opinions regarding whether Stiles exercised due care or was negligent. A trier of fact could reasonably conclude from the record evidence that Stiles was negligent because he failed to exercise due care in proceeding into the opposing lane of traffic to pass Sullivan's vehicle because he did so at an excessive speed and without covering his brake as a precaution against the possibility of civilian drivers failing to respond appropriately to the lights and sirens of the emergency vehicle.

When underlying issues of fact exist regarding whether the operation of the government-owned motor vehicle was negligent, then it is proper for the jury to decide those factual issues regarding negligence concerning both the application of the motor vehicle exception to governmental immunity and the governmental agency's ultimate liability. *Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153, 163 & n 9; 641 NW2d 285 (2002), remanded for reconsideration on other grounds sub nom by *Regan v Washtenaw Co Rd Comm*, 468 Mich 851 (2003). Because there is a genuine issue of material fact whether Stiles was negligently operating the fire truck, the trial court erred by granting summary disposition in favor of the City. *Dextrom*, 287 Mich App at 431.

## IV. COMPARATIVE FAULT

Plaintiff argues the trial court improperly granted the City's motion for summary disposition because there were genuine issues of material fact regarding Sullivan's and Stiles's respective degrees of fault.

MCL 500.3135 states, in relevant part:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

> (2) For a cause of action for damages under subsection (1) or (3)(d), all of the following apply:

> \* \* \*

> (b) *Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault*. [Emphasis added.]

"The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Rodriguez*, 191 Mich App at 488.

As previously stated, one way to provide evidence of negligent conduct is by showing a party violated a statutory provision. See *Rodriguez*, 191 Mich App at 487-488. However, a violation of a statute "is only prima facie evidence of negligence," and "[i]t remains a question of fact, for example, whether the violation had a causal connection to the claimed injury." *Randall v Michigan High Sch Athletic Ass'n*, 334 Mich App 697, 721; 965 NW2d 690 (2020) (citations omitted).

Further, in determining whether a party is negligent, an entity's

> internal rules do not fix the standard of [its] duty to others. That standard is fixed by law, either statutory or common. In other words, a defendant's violation of its own internal rule, even if the rule is designed to protect the public, does not constitute negligence per se. As such, the mere allegation that a defendant breached its own internal rule or regulation does not, without more, make out a claim for negligence. *Meyers v Rieck*, 509 Mich 460, 473; 983 NW2d 747 (2022) (quotations marks and citations omitted, alteration in original).

As previously stated, MCL 257.653 provides in relevant part as follows:

> (1) Upon the immediate approach of an authorized emergency vehicle equipped with not less than 1 lighted flashing, rotating, or oscillating lamp exhibiting a red or blue light visible under normal atmospheric condition from a

distance of 500 feet to the front of the vehicle and when the driver is giving audible signal by siren, exhaust whistle, or bell:

> (a) *The driver of another vehicle shall yield the right of way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway, clear of an intersection, and shall stop and remain in that position until the authorized emergency vehicle has passed*, except when otherwise directed by a police officer.  [Emphasis added.]

Here, there was record evidence that Stiles had his lights, siren, and horn engaged at the time of the accident and that Sullivan, after first stopping and remaining stationary for the first fire truck to pass, suddenly turned left in front of Stiles and collided with the fire truck Stiles was driving.  A reasonable trier of fact could conclude that Sullivan violated her statutory duty under MCL 257.653 to remain stopped until all three of the fire trucks had passed her.  However, as previously explained in this opinion, there remains a genuine question of material fact whether Stiles was also negligent.

Moreover, the questions of fact regarding each party's respective negligence necessarily creates further questions of fact regarding the relative degree of fault attributable to each of the parties.  This is underscored by the fact that there are conflicting expert opinions in the record regarding who was primarily at fault for the accident.  Stiles was speeding at the time of the accident despite the department training advising drivers to adhere to the speed limits, significantly reduce their speeds, and cover the brakes when approaching intersections and passing vehicles in the oncoming lane of traffic.  Although violation of an entity's internal rules is not, standing alone, evidence of negligence, whether Stiles's actions constitute "due regard for safety," as required by statute, remains a question for the fact finder.  Based on this record, reasonable minds could differ on the question whether Stiles or Sullivan was more at fault in causing this accident, and the trial court therefore erred by granting summary disposition in favor of the City.  *Rodriguez*, 191 Mich App at 488.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.  Plaintiff having prevailed in full is entitled to tax costs.  MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney

-10-