*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMIE TURNEY, JR.,

Plaintiff-Appellant,

v

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION and NICOLE
OLIVER,

Defendants-Appellees.

UNPUBLISHED
August 18, 2025
1:35 PM

No. 371657
Wayne Circuit Court
LC No. 23-014236-NI

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

Plaintiff-appellant, Samie Turney, Jr., appeals as of right the order of the trial court granting defendants-appellees, Suburban Mobility Authority for Regional Transportation ("SMART") and Nicole Oliver, summary disposition under MCR 2.116(C)(10). On appeal, plaintiff argues that the trial court erred by finding that plaintiff did not provide written notice of his claims to SMART pursuant to MCL 124.419 and dismissing the action. We agree. As will be discussed in this opinion, plaintiff timely notified SMART of his claim in the manner SMART requested plaintiff communicate with it by e-mailing notice of his claim to SMART's agent. Therefore, we reverse the trial court's order granting summary disposition in defendants' favor and remand for further proceedings.

## I. FACTS

On June 4, 2023, plaintiff was riding as a passenger on a SMART bus in Ferndale, Michigan. Plaintiff alleges that he sustained injuries when Oliver, the driver of the SMART bus, suddenly braked causing plaintiff to fall out of his seat and hit a wall barrier in the bus. Plaintiff was treated at Henry Ford Hospital for these injuries.

On June 12, 2023, plaintiff called SMART and reported the incident. The same day plaintiff's retained counsel left a voicemail advising that she was representing plaintiff and asking for SMART's file on the incident. Thereafter, SMART opened a file for the June 4, 2023 incident and attempted to call plaintiff. When plaintiff could not be reached via phone call, a Senior Claims

-1-

Examiner employed by the ASU Group sent plaintiff a letter. The letter, which was sent on June 16, 2023, informed plaintiff that the ASU Group was a third-party administrator on behalf of SMART and told plaintiff to contact the Senior Claims Examiner regarding the incident via phone or e-mail. The Senior Claims Examiner also contacted plaintiff's counsel, informed her that he was an "adjuster handling this file," and requested that she submit a letter of representation.

Thereafter, plaintiff's counsel sent the Senior Claims Examiner two e-mails with letters attached as PDFs. The first letter, dated July 18, 2023,[1] stated as follows:

| | |
|---|---|
| My Client: | Samie Turney, Jr. (DOB [omitted]) |
| Your Insured: | SMART |
| Loss Date: | Route concluded at the Transit Center at the Fairgrounds on Woodward Ave. |
| Type of Loss: | Motor Vehicle Accident |
| Responding Supervisor: | Jackie Jones |
| SMART File #: | SM0-23-000299-01 |

Mr. Ganton:

Please be advised that I have been retained by the above-named client to represent him concerning injuries sustained on the above referenced date when the SMART Bus he was on came to an abrupt stop, causing him to be thrown into the interior wall of the of the [sic] bus.

Presently, we are investigating the exact nature of the extent of our client's injuries and losses. Pending completion of our investigation, we strongly suggest that you turn this letter over to your liability insurance carrier. In addition, we are making claim [sic] on behalf of our client for the medical benefit coverage of your insurance policy. Please advise your carrier of both a liability and medical benefit claim being made against you.

At this time, I am requesting a full and complete copy of any and all <u>incident reports</u> and/or file(s) regarding this matter. I have enclosed an executed authorization for the release of the same. Please forward me the complete incident report, including any and all statements, written notes, photos, diagrams, documents, etc.

Further, be advised that an attorney's lien is claimed on any amounts recovered on behalf of my client.

---

[1] The parties did not provide the e-mail to which this letter was attached. It is unclear from this exhibit or the lower court record what the contents of the e-mail were. Although the contents of the e-mail are unknown, SMART's business records confirm that the Senior Claims Examiner received the letter on July 18, 2023.

Thank you for your anticipated cooperation.

Along with the letter, plaintiff's counsel included an authorization from plaintiff for release of information related to the incident. The second letter, dated July 24, 2023, demanded that all video footage and documentation related to the June 4, 2023 injury be preserved "until this legal matter is finally resolved."

On November 2, 2023, plaintiff filed this lawsuit against SMART and Jane Doe,[2] alleging claims of negligence and vicarious liability. In its answer, SMART argued, as an affirmative defense, that plaintiff's claims were barred by governmental immunity for failure to timely serve written notice of his claims on SMART. Later, in motions for summary disposition, defendants both argued that plaintiff did not serve SMART with written notice of its claims within 60 days of his injury as required by MCL 124.419 to avoid governmental immunity. In response, plaintiff argued the two letters sent to the Senior Claims Examiner served as timely written notice of his claims against SMART. The trial court found that plaintiff served SMART with written notice of his claims for the first time in November 2023 when the summons and complaint were served on SMART. Because this was outside the statutory time frame in MCL 124.419, the trial court concluded SMART was not timely served with notice and plaintiff's claims were barred by application of governmental immunity. The trial court entered two orders granting defendants' motions for summary disposition. This appeal follows.

## II. STANDARD OF REVIEW

This Court reviews de novo a decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A trial court may grant summary disposition under MCR 2.116(C)(7) on the basis of immunity granted by law. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).[3] Under MCR 2.116(C)(7), a reviewing court "must accept all well-pleaded factual allegations as true" and construe them in the light most favorable to the nonmoving party, unless other evidence contradicts them. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). The reviewing court must consider any affidavits, depositions, or other documentary evidence to determine if there is a genuine issue of material fact. *Id*. at 429. "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*. Matters of statutory interpretation are also reviewed de novo. *Atkins v Suburban Mobility Auth for Regional Transp*, 492 Mich 707, 714; 822 NW2d 522 (2012).

---

[2] Oliver was later added as a defendant in plaintiff's amended brief.

[3] The trial court granted summary disposition under MCR 2.116(C)(10); however, because the trial court granted summary disposition on the basis of governmental immunity, review of the trial court's decision is appropriate under MCR 2.116(C)(7). *Spiek v Mich Dep't of Transp*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998) ("Where summary disposition is granted under the wrong rule, Michigan appellate courts, according to longstanding practice, will review the order under the correct rule.").

III. ANALYSIS

Plaintiff argues the trial court erred by finding that he did not comply with the notice requirements of MCL 124.419 because he served two letters on the Senior Claims Examiner within the 60-day time frame of MCL 124.419. Because the July 18, 2023 letter informed SMART of plaintiff's claim against it within the 60-day time frame and defendants acquiesced to notice via e-mail, we agree.

Under the Governmental Tort Liability Act, MCL 691.1401 *et seq.*, government entities are generally immune from tort liability. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). However, a government entity may voluntarily subject itself to liability and place conditions or limitations on the liability imposed. *Atkins*, 492 Mich at 714. Statutory notice provisions are a common means to regulate when a person may sue a government entity. *Id*.

The Metropolitan Transportation Authorities Act, MCL 124.401 *et seq.*, sets forth provisions governing governmental public transportation agencies. There is no dispute that SMART is a governmental public transportation agency. Within this Act, a statutory notice provision sets forth a 60-day deadline no later than the date of the injury for a plaintiff to serve written notice of his or her ordinary claims against common carriers. That statute provides as follows:

> All claims that may arise in connection with the transportation authority shall be presented as *ordinary claims* against a common carrier of passengers for hire: *Provided, That written notice of any claim based upon injury to persons or property shall be served upon the authority no later than 60 days from the occurrence through which such injury is sustained* and the disposition thereof shall rest in the discretion of the authority and all claims that may be allowed and final judgment obtained shall be liquidated from funds of the authority: Provided, further, That only the courts situated in the counties in which the authority principally carries on its function are the proper counties in which to commence and try action against the authority. [MCL 124.419 (emphasis added).]

"Statutory notice requirements must be interpreted and enforced as plainly written." *Atkins*, 492 Mich at 710. Use of the term "shall" in MCL 124.419 indicates that compliance with the notice provision is a mandatory directive. See *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014). As provided by MCL 124.419, the requirements a plaintiff must meet to inform a defendant of his ordinary claims are as follows: (1) written notice of any claim; (2) based upon injury; (3) to persons or property; (4) shall be served; (5) upon the authority; (6) no later than 60 days; (7) from the occurrence through which such injury is sustained.

Both this Court and our Supreme Court have previously addressed the requirements of the notice provision in MCL 124.419. In *Atkins*, our Supreme Court addressed the substantive requirements of the notice provided by a plaintiff when it considered "whether an application for no-fault benefits can suffice as the notice of a separate tort claim that MCL 124.419 requires." *Atkins*, 492 Mich at 716. In that case, a plaintiff injured on a SMART bus applied for no-fault benefits with SMART's insurer soon after the incident, but did not notify SMART that she would

pursue a tort claim until seven months after the incident. *Id*. at 709. The Court concluded that the application for no-fault benefits could not act as notice because a claim for no-fault benefits and a tort claim are qualitatively different. *Id*. at 716-718.

The Court explained that the no-fault system was designed to supplant tort recovery. *Id*. at 717-718. In contrast to a third-party claim in which damages are paid from the authority's own funds, a claim for no-fault benefits was paid from the transportation authority's insurer. *Id*. at 718. Further, an application for first-party insurance benefits is recoverable without regard to fault. *Id*. Accordingly, a person who proves his entitlement to first-party benefits would not need to prove the elements that would entitle him to damages in a third-party tort claim. *Id*. With receipt of the no-fault claim alone, the transportation authority was left guessing whether it only needed to verify the existence of a valid first-party claim or to prepare to defend against a third-party tort claim. *Id*. at 721.

Likewise, the Court explained that the transportation authority's institutional knowledge of the operative facts of the incident could not fulfill the statutory notice requirement. *Id*. at 720-721. The statute requires "written notice" of the "claims" which must be "served" upon the authority. *Id*. at 720 (quotation marks and citation omitted). The Court clarified, "[a] claim is not merely an occurrence; it is a demand for payment pursuant to a legal right as a result of that occurrence." *Id*.

In *Nuculovic*, a case decided before *Atkins*, this Court rejected a plaintiff's claim that proper notice was given because SMART received a copy of a police report and an accident report prepared by its bus operator and a supervisor. *Nuculovic v Hill*, 287 Mich App 58, 66; 783 NW2d 124 (2010). The Court explained that SMART could not "deliver" these reports to itself. *Id*. at 68. In its analysis of the plaintiff's argument, the Court recognized that the word "service" was not defined in MCL 124.419. *Id*. at 67. It treated "service" as a term of art and relied on its definition in *Black's Law Dictionary* (8th ed): "[t]he *formal delivery* of a writ, summons, or other legal process . . . ." *Id*. The Court also relied on "service of process" as defined by the court rules as examples of how formal delivery is established. *Id*.

Then, in an opinion published after *Atkins*, this Court explained that while *Nuculovic* relied on the court rules when analyzing the definition of "serve," the Court did not hold that strict compliance with the court rules was required to fulfill the requirements of MCL 124.419. *Fields v Suburban Mobility Auth for Regional Transp*, 311 Mich App 231, 236; 874 NW2d 715 (2015). Rather, the *Nuculovic* Court used the court rules as an example of how formal delivery could be accomplished. *Id*. The *Fields* Court concluded, "while strict compliance with the court rules may not necessarily be required, some kind of 'formal delivery' nonetheless is required." *Id*.

On appeal, plaintiff's arguments are focused on whether the July 18, 2023 and July 24, 2023 letters were sufficient to notify SMART because they were timely sent to the Senior Claims Examiner, who was an employee of the ASU Group, and could receive notice on behalf of SMART as its agent. In response, defendants contend that the notice could not be sent to an agent. Instead, defendants assert notice may only be served on SMART directly because it is the "authority" named in the statute.

The statute states without elaboration that notice "shall be served upon the authority." MCL 124.419 Nothing in this language or the remainder of the statute is as restrictive to preclude a plaintiff from providing notice to SMART through its agents. Accordingly, we conclude that a plaintiff complies with MCL 124.419 when it serves notice of his claim on SMART through its agent.

In this case, the record reflects that the ASU Group was SMART's agent for purposes of administrating claims against it. "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). Additionally, "[a]pparent authority may arise when acts and appearances lead a third person reasonably to believe that an agency relationship exists." *Id*. at 698-699. On June 12, 2023, plaintiff called SMART to report the incident. The same day, the ASU Group set up a claim file and attempted to call plaintiff. Thereafter, on June 16, 2023, the Senior Claims Examiner sent plaintiff a letter informing him that the ASU Group was a third-party administrator on behalf of SMART and to contact the ASU Group by phone or e-mail regarding the incident. Likewise, in an e-mail the Senior Claims Examiner sent to plaintiff's counsel, the Senior Claims Examiner identified himself as the "adjuster handling the file" and asked plaintiff's counsel to send a letter of representation. Through this course of conduct, SMART held the ASU Group out to be its agent and the ASU Group acted in a manner that would have led a reasonable person to believe it was SMART's agent for purposes of administrating claims against SMART. Accordingly, plaintiff's notice was not insufficient because it was sent to SMART's agent instead of directly to SMART.

Likewise, the July 18, 2023 letter was substantively sufficient to constitute notice of an ordinary claim under MCL 124.419. Plaintiff's counsel sent the first letter to the Senior Claims Examiner after he requested a "letter of representation." The letter advised that plaintiff's counsel was retained to represent plaintiff concerning injuries he was alleged to have received on June 4, 2023 on a SMART bus. The letter further advised that plaintiff's counsel was investigating the nature of plaintiff's injuries and losses and suggested that the letter be turned over to SMART's liability insurance carrier. The letter then states, "[p]lease advise your carrier of both a liability and medical benefit claim being made against you" and claims an attorney's lien "on any amounts recovered on behalf of my client." The letter sufficiently described the June 4, 2023 incident that caused plaintiff's injuries and informed SMART that plaintiff intended to pursue a liability claim against it. From this information, defendants could deduce that plaintiff intended to bring a liability claim against it. See *Fields*, 311 Mich App at 238-239. Accordingly, the first letter gave notice that plaintiff would pursue an ordinary claim against SMART. Because the July 18, 2023 letter substantively informed SMART of plaintiff's claim against it, we need not address the second letter.

Finally, defendants contend that plaintiff did not comply with MCL 124.419 because the July 18, 2023 letter was delivered via e-mail and e-mail does not constitute "formal delivery" for purposes of MCL 124.419. We decline to make any holding whether delivery of notice via e-mail constitutes "formal delivery" under MCL 124.419. We need not reach this issue because SMART consented to notice via e-mail when its agent, the ASU Group, through its express communications with plaintiff, informed plaintiff to communicate with it regarding his claims via phone or e-mail.

-6-

The record reflects that plaintiff first contacted SMART about the incident. The Senior Claims Examiner, as an agent hired by SMART to handle claims against it, responded by sending plaintiff a letter. This letter informed plaintiff that the ASU Group was SMART's third-party administrator and then expressly instructed him to contact the Senior Claims Examiner regarding the June 4, 2023 incident by phone call or e-mail. Plaintiff, through his counsel, sent SMART the notice of his third-party tort claim in the precise manner the Senior Claims Examiner requested in the letter. Accordingly, SMART acquiesced to notice in the manner plaintiff provided.

In conclusion, SMART acquiesced to notice via e-mail and plaintiff otherwise complied with the notice requirements of MCL 124.419. Through his counsel, plaintiff sent a letter describing his intent to bring a liability claim against SMART based on the injuries he sustained in the June 4, 2023 incident. He delivered this letter to defendant's agent in the manner the ASU Group requested that plaintiff communicate with it within 60 days of the incident. This was sufficient to notify SMART of the claim against it. For these reasons, the trial court erred in concluding that plaintiff did not serve notice of his claim on SMART until November 2023 and that defendants were immune from suit.

Reversed and remanded for further proceedings. We do not retain jurisdiction.


/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi