SELDON v SUBURBAN MOBILITY AUTHORITY FOR REGIONAL
TRANSPORTATION

Docket No. 295748. Submitted January 4, 2012, at Detroit. Decided June
26, 2012. Approved for publication July 31, 2012, at 9:10 a.m.
Leave to appeal denied, 493 Mich 905.

Ruby Seldon brought an action in the Wayne Circuit Court against
Suburban Mobility Authority for Regional Transportation (SMART)
and Queen Perry, an employee of SMART, seeking damages for
injuries sustained while a passenger on a SMART bus when Seldon,
a wheelchair user, was ejected from her wheelchair as Perry applied
the brakes of the SMART bus she was driving in order to stop at a
yellow traffic signal light. Seldon alleged claims of negligence and
gross negligence against defendants. The court, Kathleen Macdonald,
J., denied SMART's motion for summary disposition with regard to
its claims of governmental immunity and granted summary disposi-
tion for Perry with regard to the gross negligence claim. SMART
appealed and Seldon cross-appealed.

The Court of Appeals *held*:

1. SMART had no duty to advise Seldon of the availability of a
shoulder restraint or to secure her in her wheelchair. Regulations
promulgated by the United States Department of Transportation
to effectuate the purpose of the Americans with Disabilities Act, 42
USC 12101 *et seq.*, prohibit a transit operator from requiring
passengers in wheelchairs to use seat belts or shoulder restraints
unless the operator requires the same of all passengers. Because
SMART buses are not equipped with such devices for all passen-
gers, SMART could not require Seldon to use a shoulder restraint.
To require operators to inform passengers in wheelchairs of the
availability of seat belts or shoulder restraints, in light of the
unavailability of such devises for passengers not using wheel-
chairs, would impose a different duty on operators depending on
whether a passenger is able-bodied or wheelchair bound and would
be contrary to the tenet that disabled passengers are to be treated
the same as able-bodied passengers. Federal regulations require
that an operator's drivers or other personnel provide assistance
with lifts, ramps, and devices to secure a wheelchair, but do not
require operators to advise a passenger in a wheelchair of the

availability of a seat belt or shoulder restraint. Federal regulations further provide that transit operators may not place personal restraints on passengers in wheelchairs absent some indication by the passenger that he or she wishes to wear one. The trial court erred by concluding that SMART owed a duty to advise Seldon of the availability of a shoulder restraint, but properly concluded that SMART had no duty to secure Seldon by using a personal restraint such as a seat belt or shoulder harness.

2. Although the loading and unloading of passengers is an activity within the "operation" of a motor vehicle for purposes of the motor vehicle exception to governmental immunity provided in MCL 691.1405, the failure to inform Seldon that a shoulder restraint was available, without more, did not constitute the "operation" of the motor vehicle. The motor vehicle exception was inapplicable. The trial court erred by denying the part of SMART's motion for summary disposition that was based on the defense of governmental immunity.

3. Regardless of the specific basis of a trial court's ruling on a motion for summary disposition, whenever the effect is to deny a defendant's claim of governmental immunity, the ruling is reviewable under MCR 7.203(A) and MCR 7.202(6)(a)(v). The Court of Appeals had jurisdiction to review, pursuant to MCR 7.203(A) and MCR 7.202(6)(a)(v), the trial court's determination, with regard to SMART's motion for summary disposition, that plaintiff established a question of fact regarding whether the sudden stopping of the bus by Perry was negligence or, instead, was within the normal incidents of travel, because the effect of the ruling was to deny SMART's claim of governmental immunity.

4. The trial court erroneously determined that Seldon presented evidence establishing a justiciable question of fact regarding whether Perry operated the bus negligently. Absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel. There was no evidence presented that Perry operated the bus negligently by traveling within the speed limit while the traffic control signal was green.

5. Perry's actions did not constitute "the proximate cause" of Seldon's injuries as required by MCL 691.1407(2)(c). The application of the brakes was the one most immediate, efficient, and direct cause preceding Seldon's injuries and Perry's failure to secure Seldon with a personal restraint was not the cause of Seldon's injuries. The record does not indicate that Perry acted

with gross negligence when she applied the brakes. The trial court properly granted summary disposition for Perry with regard to the gross negligence claim.

Affirmed in part and reversed in part.

STEPHENS, J., concurring in part and dissenting in part, agreed with the determination of the majority that the trial court properly granted summary disposition with regard to the claim of gross negligence. Judge STEPHENS disagreed that the trial court erred by only granting in part SMART's motion for summary disposition because she believes that the trial court properly determined that defendants owed Seldon a duty to advise her of the availability of a seat belt, that there is a genuine issue of material fact relating to whether a sudden stop caused Seldon's injuries, and that the motor vehicle exception to governmental immunity, MCL 691.1405, applies. Therefore, the entire order of the trial court should be affirmed. The federal prohibition precluding defendants from requiring Seldon to utilize a seat belt to restrain her in her wheelchair did not eliminate the duty to inform Seldon that a shoulder restraint was available for wheelchair users so that she could decide whether she wished to use it. The federal regulations do not prohibit, restrict, or comment in any specific way about a transportation provider's responsibility to advise passengers in wheelchairs of available seat belts. The duty of public transportation authority's personnel to ensure that a passenger with a disability is able to take advantage of the accessibility and safety features on vehicles arguably includes apprising the passenger of the existence of the accessibility features, because a passenger cannot take advantage of a feature of which he or she is unaware. The purported negligence of SMART, through Perry, involving the failure to mention the availability of a seat belt capable of strapping Seldon in her wheelchair, comprises a component of the loading of passengers in wheelchairs, an action within the operation of a bus, that satisfies the exception to governmental immunity set forth in MCL 691.1405. An inference of negligence reasonably arises from the fact that Perry's braking of the bus at a traffic signal light was sudden enough to dislodge Seldon from her wheelchair with enough force to break both her ankles. The jury should be permitted to decide whether Perry committed a negligent act that caused Seldon's injuries. Although defendants had a duty to inform Seldon of the availability of a shoulder restraint, defendants did not have duty to actually apply the restraint absent a request by Seldon. The record demonstrates insufficient evidence to maintain an action for gross negligence against Perry.

1. PUBLIC TRANSPORTATION — PASSENGERS IN WHEELCHAIRS — SAFETY DEVICES — REQUIRED USE OF SAFETY DEVICES.

Regulations promulgated by the United States Department of Transportation to effectuate the purpose of the Americans with Disabilities Act prohibit a transit operator that provides transportation services to the general public from requiring passengers in wheelchairs to use seat belts or shoulder restraints unless the operator requires the same of all passengers; requiring operators to inform passengers in wheelchairs of the availability of seat belts or shoulder restraints when such devices are unavailable to passengers not in wheelchairs is contrary to the tenet that disabled passengers are to be treated the same as able-bodied passengers (42 USC 12101 *et seq.*; 49 CFR 37.1; 49 CFR 37.5).

2. PUBLIC TRANSPORTATION — PASSENGERS IN WHEELCHAIRS — SAFETY DEVICES.

Although federal regulations state that a public transportation entity's personnel have an obligation to ensure that a passenger with a disability is able to take advantage of the accessibility and safety features on a vehicle, the obligation requires only that the personnel provide assistance with lifts, ramps, and devices to secure a wheelchair and does not require such personnel to advise passengers in wheelchairs that seat belts or shoulder restraints are available (49 CFR, part 37, appendix D, subpart G, § 37.165).

3. PUBLIC TRANSPORTATION — GOVERNMENTAL IMMUNITY — ACTIVITIES WITHIN THE OPERATION OF A MOTOR VEHICLE.

The loading and unloading of passengers is an activity within the operation of a motor vehicle for purposes of the motor vehicle exception to governmental immunity; the failure to inform a passenger in a wheelchair that a shoulder restraint is available does not, without more, constitute the operation of the motor vehicle (MCL 691.1405).

4. APPEAL — MOTIONS AND ORDERS — GOVERNMENTAL IMMUNITY — SUMMARY DISPOSITION.

Regardless of the specific basis of a trial court's ruling on a motion for summary disposition, whenever the effect is to deny a defendant's claim of governmental immunity the decision is, in fact, an order denying governmental immunity that is reviewable under MCR 7.202(6)(a)(v) and MCR 7.203(A).

5. PUBLIC TRANSPORTATION — NEGLIGENCE — SUDDEN STOPPING OF BUS.

A plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped, absent evidence of other negligence pertaining to the operation of the bus, because such stops are normal incidents of travel.

6. PUBLIC TRANSPORTATION — PASSENGERS WITH DISABILITIES — PASSENGER SECUREMENT SYSTEMS.

Federal regulations provide that the personnel of public transit operators shall assist individuals with disabilities with the use of securement systems when necessary or upon request but may not place personal restraints on passengers in wheelchairs absent an indication by such a passenger that he or she wishes to use one (49 CFR 37.165[f]).

7. GOVERNMENTAL IMMUNITY — GROSS NEGLIGENCE — PROXIMATE CAUSE — WORDS AND PHRASES.

The phrase "the proximate cause" in MCL 691.1407(2)(c) requires that the governmental employee's grossly negligent conduct be the one most immediate, efficient, and direct cause preceding an injury.

*Moss & Colella, P.C.* (by *A. Vince Colella* and *Laura R. Dierwa*), for plaintiff.

*Vandeveer Garzia, P.C.* (by *Christian E. Hildebrandt* and *John J. Lynch*), for defendant.

Before: DONOFRIO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

DONOFRIO, P.J. Defendant Suburban Mobility Authority for Regional Transportation (SMART) appeals as of right the trial court's order denying in part its motion for summary disposition with respect to its claims of governmental immunity. Plaintiff cross-appeals the same order to the extent that the court granted summary disposition for defendant Queen Perry and partially granted summary disposition for SMART. We hold that because SMART had no duty to secure plaintiff in her wheelchair or inform her of the availability of a shoulder restraint, the failure to inform plaintiff did not constitute the operation of a motor vehicle under MCL 691.1405, which states the motor vehicle exception to governmental immunity. Because plaintiff failed to es-

tablish a justiciable question of fact regarding whether Perry operated the bus negligently or acted with gross negligence, we affirm the grant of summary disposition in favor of Perry and the partial summary disposition in favor of SMART and reverse the partial denial of SMART's motion for summary disposition.

Plaintiff instituted this action because of injuries that she sustained in January 2008 while riding on a SMART bus driven by defendant Perry. Plaintiff was ejected from her wheelchair and sustained bilateral ankle fractures when Perry applied the brakes to stop at a yellow traffic signal light. Plaintiff alleged claims of negligence and gross negligence against SMART and Perry. The trial court denied summary disposition for SMART with regard to its claims of governmental immunity and granted summary disposition for Perry on plaintiff's gross negligence claim. SMART now appeals and plaintiff cross-appeals the trial court's decisions.

## I. DUTY TO ADVISE

SMART first argues that the trial court erred by denying its motion for summary disposition on the basis that it owed plaintiff a duty to advise her of the availability of a shoulder restraint. We review de novo a trial court's decision on a motion for summary disposition. *Robertson v Blue Water Oil Co*, 268 Mich App 588, 592; 708 NW2d 749 (2005). Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred by immunity granted by law. *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). In reviewing a ruling pursuant to subrule (C)(7), "[w]e consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents spe-

cifically contradict them." *Fane*, 465 Mich at 74. The applicability of governmental immunity is a question of law that is also reviewed de novo. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004).

In order to establish a prima facie negligence claim, a plaintiff must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Id*. Whether a duty exists is a question of law for the court to decide. *Anderson v Wiegand*, 223 Mich App 549, 554; 567 NW2d 452 (1997).

SMART had no legal duty to advise plaintiff of the availability of a shoulder restraint. Regulations promulgated by the United States Department of Transportation (DOT) to effectuate the purpose of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, prohibit a transit operator from requiring passengers in wheelchairs to use seat belts or shoulder restraints unless the operator requires the same of all passengers. 49 CFR 37.1; 49 CFR 37.5. Because SMART buses are not equipped with such devices for all passengers, SMART could not have legally required plaintiff to use a shoulder restraint. Requiring operators to inform passengers in wheelchairs of the availability of seat belts or shoulder restraints, in light of the unavailability of such devices for passengers not using wheelchairs, would impose a different duty on operators depending on whether a passenger is able-bodied or wheelchairbound and runs contrary to the tenet that disabled passengers are to be treated the same as able-bodied passengers.

Further, while appendix D, subpart G, § 37.165 to 49 CFR, part 37 states that an "entity's personnel have an

obligation to ensure that a passenger with a disability is able to take advantage of the accessibility and safety features" on a vehicle, this obligation requires only that drivers or other personnel provide assistance with lifts, ramps, and devices to secure a wheelchair. No regulation requires a transit operator to advise a passenger in a wheelchair of the availability of a seat belt or shoulder restraint. Likewise, SMART's internal policy did not require defendant Perry, the bus driver, to advise plaintiff that a shoulder restraint was available. Accordingly, SMART owed no duty to advise plaintiff of the availability of a shoulder restraint, and the trial court erred by concluding otherwise.[1]

## II. OPERATION OF A MOTOR VEHICLE

SMART next argues that even if it owed plaintiff a duty to inform her that a shoulder restraint was available, the failure to do so did not constitute the "operation" of a motor vehicle within the meaning of MCL 691.1405, which states the motor vehicle exception to governmental immunity. MCL 691.1405 provides that

---

[1] We know from plaintiff's deposition that she had previously worked as a bus driver for the Southeastern Michigan Transportation Authority (SEMTA), now known as SMART, and was familiar with passengers in wheelchairs, wheelchair restraints, and shoulder restraints. Although she had not operated the specific kind of bus involved in this accident, a bus designed with a lift and used to transport disabled persons, she testified that she had ridden this type of bus previously and had neither used nor been advised of the presence of a shoulder restraint and had not requested to use one. Plaintiff further testified that her wheelchair was equipped with a lap belt, but it did not reach around her. Similarly, Perry testified that the lap belt did not reach around plaintiff and that she did not believe that the shoulder restraint would have fit around plaintiff either. Moreover, the record shows that when emergency services personnel arrived, plaintiff was lifted back into her wheelchair and SMART transported her to the same hospital that had been her original destination. Notably, the emergency services personnel used their own restraint rather than the bus's shoulder restraint to secure her in her wheelchair.

"[g]overnmental agencies shall be liable for bodily injury . . . resulting from the negligent operation . . . of a motor vehicle[.]" In *Chandler v Muskegon Co*, 467 Mich 315, 321; 652 NW2d 224 (2002), our Supreme Court interpreted the phrase "operation of a motor vehicle" to "encompass[] activities that are directly associated with the driving of a motor vehicle." In *Martin v Rapid Inter-Urban Partnership*, 480 Mich 936 (2007), the Court held, in an order, that "[t]he loading and unloading of passengers is an action within the 'operation' of a shuttle bus." In that case, the plaintiff was injured when she slipped and fell on the bus steps as she was attempting to get out of the vehicle. *Id.*

Here, even if SMART owed plaintiff a duty to inform her of the availability of a shoulder restraint, the failure to so advise her did not implicate MCL 691.1405. Although the loading and unloading of passengers is an activity within the operation of a motor vehicle, the failure to inform plaintiff that a shoulder restraint was available, without more, did not constitute the "operation" of the motor vehicle. Notably, plaintiff's wheelchair was loaded onto the bus and secured without incident, and plaintiff was not injured during the loading or unloading process. Thus, the motor vehicle exception to governmental immunity was inapplicable, and the trial court erred by denying SMART's motion for summary disposition based on governmental immunity.

### III. SUDDEN STOPPING

SMART next argues that even if the motor vehicle exception to governmental immunity was applicable, the trial court erred by determining that plaintiff established a question of fact regarding whether Perry's sudden stopping of the bus was negligence or was part

of the normal incidents of travel. Before addressing the merits of this argument, we first address plaintiff's claim that this Court lacks jurisdiction to decide this issue.

Plaintiff argues that this issue, pertaining to whether plaintiff has presented sufficient evidence to establish a jury question regarding negligence, is not appealable as of right pursuant to MCR 7.203(A) and MCR 7.202(6)(a)(v). Those provisions state that this Court has jurisdiction to decide an appeal of right from an order denying governmental immunity under MCR 2.116(C)(7) or "denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity," but the appeal is limited to "the portion of the order with respect to which there is an appeal of right." MCR 7.203(A)(1). In *Walsh v Taylor*, 263 Mich App 618, 625; 689 NW2d 506 (2004), this Court interpreted the provisions and opined that "regardless of the specific basis of the trial court's ruling on a motion for summary disposition, whenever the effect is to deny a defendant's claim of immunity, the trial court's decision is, in fact, 'an order denying governmental immunity,' " and is reviewable under MCR 7.203(A) and MCR 7.202(6)(a)(v). Here, the trial court determined that plaintiff established a question of fact regarding whether the sudden stopping of the bus was negligence or was within the normal incidents of travel. Pursuant to MCL 691.1405, SMART was liable only if plaintiff's injuries resulted from "the negligent operation" of a motor vehicle. Otherwise, SMART was immune from liability. Because the effect of the trial court's ruling was to deny SMART's claim of immunity, we have jurisdiction to address this issue pursuant to MCR 7.203(A) and MCR 7.202(6)(a)(v).

A motion pursuant to MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under subrule (C)(10), we consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621.

The trial court erroneously determined that plaintiff presented evidence establishing a justiciable question of fact regarding whether Perry operated the bus negligently. It is well settled that, absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel. *Russ v Detroit*, 333 Mich 505, 508; 53 NW2d 353 (1952); *Sherman v Flint Trolley Coach, Inc*, 304 Mich 404, 416; 8 NW2d 115 (1943); *Zawicky v Flint Trolley Coach Co, Inc*, 288 Mich 655, 658-659; 286 NW 115 (1939). Here, the record contains no evidence that Perry operated the bus negligently. The only evidence of the bus's speed near the time that plaintiff was ejected from her wheelchair shows that Perry was driving within the 35-mile-per-hour speed limit. Plaintiff contends that Perry operated the bus negligently because Perry failed to anticipate that the green traffic signal light would change to yellow. This argument is untenable, however, because Perry did not act negligently by traveling within the speed limit while the traffic signal light was green. Further, the mere fact that an injury occurred does not itself indicate that Perry operated the bus negligently. See *id.* at 659. Accordingly, plaintiff failed to present evidence establishing a justiciable question of fact regarding whether Perry operated the bus negligently. Thus, summary disposition

was appropriate on this basis, and the trial court's decision to the contrary was erroneous.

### IV. DUTY TO APPLY SEAT BELTS

On cross-appeal, plaintiff argues that the trial court erroneously determined that SMART did not owe her a duty to secure her in her wheelchair using a personal restraint such as a seat belt or shoulder restraint. The trial court correctly determined that SMART owed no such duty. The Federal Transit Administration's (FTA) bulletin "Questions and Answers Concerning Common Wheelchairs and Public Transit" provides:

> **Does a wheelchair user have to use the seatbelt and shoulder harness?**
>
> Under the broad non-discrimination provisions in Section 37.5 of the DOT's ADA regulations [49 CFR 37.5], *a transit operator is not permitted to mandate the use by wheelchair users of seatbelts and shoulder harnesses, unless the operator mandates the use of these devices by all passengers*, including those sitting in vehicle seats. For example, on fixed route buses, if none of the other passengers are required to wear shoulder belts then neither can the person in the mobility device be required to do so.
>
> Transit operators may establish a policy that requires the seatbelt and shoulder harness to be used by all riders, including those who use wheelchairs as well as those who use vehicle seats, if seatbelts and shoulder harnesses are provided at all seating locations. [Emphasis added.]

Thus, where, as here, a transit operator has not adopted a policy requiring all passengers to wear restraints, the operator may not require passengers in wheelchairs to wear restraints.

Further, 49 CFR 37.165(f) provides that the personnel of transit operators "shall assist individuals with disabilities with the use of securement systems" "[w]here neces-

sary or upon request . . . ." Therefore, according to 49 CFR
37.165(f), a regulation promulgated by the DOT, and the
FTA's interpretation of the DOT's nondiscrimination
regulation, transit operators may not place personal re-
straints on passengers in wheelchairs absent some indica-
tion by the passenger that he or she wishes to wear one.
Pursuant to 42 USC 12149(a), the United States Congress
conferred on the Secretary of Transportation the obliga-
tion to issue regulations pertaining to public transporta-
tion other than by aircraft and certain rail operations.
Congress directed that "[t]he regulations . . . shall include
standards applicable to facilities and vehicles[.]" 42 USC
12149(b). "When Congress has . . . [given] an express del-
egation of authority to [an] agency to elucidate a specific
provision of the statute by regulation, . . . any ensuing
regulation is binding in the courts unless procedurally
defective, arbitrary or capricious in substance, or mani-
festly contrary to the statute." *United States v Mead
Corp*, 533 US 218, 227; 121 S Ct 2164; 150 L Ed 2d 292
(2001) (quotation marks and citation omitted). The FTA is
an agency under the direction of the DOT, which Congress
has expressly invested with authority to promulgate the
relevant public-transit regulations at issue here, and
plaintiff has not suggested that the DOT regulations are
"procedurally defective, arbitrary or capricious in sub-
stance, or manifestly contrary to the statute." *Id.*

Accordingly, we conclude that the trial court properly
granted summary disposition for SMART on the basis
that it had no duty to secure plaintiff using a personal
restraint such as a seat belt or shoulder restraint.

V. GROSS NEGLIGENCE

Finally, plaintiff argues that the trial court errone-
ously granted summary disposition for Perry on plain-
tiff's gross negligence claim. MCL 691.1407(2) sets

forth the standard for governmental immunity pertaining to individual actors and employees of governmental agencies. The subsection provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The parties do not dispute that Perry was driving the bus within the scope of her authority or that SMART was engaged in the exercise or discharge of a governmental function. Rather, plaintiff argues that Perry acted with gross negligence by failing to secure her using a personal restraint and by suddenly stopping the bus with such force that plaintiff was ejected from her wheelchair.

The Legislature has defined "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a). "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123;

597 NW2d 817 (1999). "If reasonable jurors could honestly reach different conclusions regarding whether conduct constitutes gross negligence, the issue is a factual question for the jury. However, if reasonable minds could not differ, the issue may be determined by a motion for summary disposition." *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010).

Plaintiff's argument that Perry's failure to secure her using a personal restraint constituted gross negligence lacks merit. As previously discussed, SMART had no duty to apply a restraint such as a seat belt or shoulder restraint on plaintiff. In fact, if Perry had done so absent plaintiff's request, she would have violated DOT regulations promulgated to effectuate the purposes of the ADA. See 49 CFR 37.1; 49 CFR 37.5. Accordingly, it cannot be said that Perry's failure to apply a restraint constituted "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a).

Moreover, Perry's actions did not constitute "the proximate cause" of plaintiff's injuries as required by MCL 691.1407(2)(c). A "determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). The phrase "the proximate cause" in MCL 691.1407(2)(c) requires that "the [governmental] employee's conduct . . . be 'the one most immediate, efficient, and direct cause preceding an injury.' " *Curtis v City of Flint*, 253 Mich App 555, 563; 655 NW2d 791 (2002), quoting *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).

Here, plaintiff's ejection from her wheelchair oc-
curred when Perry applied the brakes to stop for a
yellow traffic signal light. Thus, the application of the
brakes was " 'the one most immediate, efficient, and
direct cause preceding [plaintiff's] injury,' " *Curtis*, 253
Mich App at 563, quoting *Robinson*, 462 Mich at 459,
and Perry's failure to secure plaintiff with a personal
restraint was not the proximate cause of plaintiff's
injuries. Moreover, the record does not indicate that
Perry acted with gross negligence when she applied the
brakes. As previously discussed, plaintiff failed to
present evidence establishing a justiciable question of
fact regarding whether Perry operated the bus negli-
gently. Accordingly, there can be no justiciable question
of fact regarding whether Perry operated the bus with
gross negligence. The trial court therefore properly
granted summary disposition for Perry on plaintiff's
gross negligence claim.

Affirmed in part and reversed in part. SMART, being
the prevailing party, may tax costs pursuant to MCR
7.219.

RONAYNE KRAUSE, J., concurred with DONOFRIO, P.J.

STEPHENS, J. (*concurring in part and dissenting in
part*). I respectfully concur in part and dissent in part.
While I agree that the trial court properly granted
summary disposition regarding the claim of gross neg-
ligence, I disagree that the trial court erred in only
granting in part SMART's motion for summary dispo-
sition. Because I conclude that the trial court properly
determined that defendants owed plaintiff a duty to
advise her of the availability of a seat belt, that there is
a genuine issue of material fact relating to whether a
sudden stop caused plaintiff's injuries, and that the

motor vehicle exception to governmental immunity applies, I would affirm in whole.

The majority correctly notes that federal regulations precluded defendants from *requiring* plaintiff to utilize a seat belt to restrain her in her wheelchair. However, I am not persuaded that the federal prohibition in question eliminated a duty to inform plaintiff that a shoulder restraint was available for wheelchair users so that she could decide whether she wished to use it. The federal regulations do not prohibit, restrict, or comment in any specific way about a transportation provider's responsibility to advise passengers in wheelchairs of available seat belts. However, appendix D, subpart G, § 37.165 to 49 CFR, part 37, which represents the Department of Transportation's interpretation of 49 CFR, part 37, exhorts the public transportation authority's personnel to "ensure that a passenger with a disability is able to take advantage of the accessibility and safety features on vehicles." This arguably includes apprising the passenger of the existence of the accessibility features, because a passenger cannot take advantage of a feature of which he or she is unaware. The record reveals that plaintiff had requested to be positioned behind the driver's seat to minimize her mobility and limit the risk of being discharged from her wheelchair. It further indicates that Perry had attempted to secure the wheelchair with a lap belt, which proved to be too small. Under those circumstances, Perry would have been aware that plaintiff would have likely welcomed information regarding the availability of a shoulder restraint. Consequently, I do not share the majority's concern that to provide plaintiff with information regarding the shoulder restraint would be "contrary to the tenet that disabled passengers are to be treated the same as able-bodied passengers."

Likewise, I disagree with the majority's conclusion that the motor vehicle exception to governmental immunity is inapplicable under the facts of this case. My disagreement with the majority regarding the motor vehicle exception arises from our differing interpretations of the term "loading." The parties in this case cite and discuss at some length the significance of the Michigan Supreme Court's order in *Martin v Rapid Inter-Urban Partnership*, 480 Mich 936 (2007). After quoting the relevant language of MCL 691.1405, the Supreme Court concluded that the plaintiff had alleged the occurrence of an injury resulting from the negligent operation of a motor vehicle, explaining:

> In this case, the plaintiff alleges that she slipped and fell down the steps of a shuttle bus owned and operated by the defendants as she was attempting to exit the bus. *The loading and unloading of passengers is an action within the "operation" of a shuttle bus.* Accordingly, the plaintiff has satisfied the exception to governmental immunity set forth in MCL 691.1405. [*Id.* (emphasis added).]

In this case, the purported negligence of SMART, through Perry, involves the failure to mention the availability of a seat belt capable of strapping plaintiff into her wheelchair. I conclude that this constitutes a component of the loading of passengers in wheelchairs, "an action within the 'operation' of a shuttle bus." *Martin*, 480 Mich at 936. Plaintiff is essentially arguing that in failing to apprise her of the available restrains, defendants prevented her from being properly and completely loaded into the vehicle, which subsequently led to her injury. I would hold that "plaintiff has satisfied the exception to governmental immunity set forth in MCL 691.1405." *Id.*

Further, I disagree with the majority's conclusion that plaintiff failed to present a genuine issue of mate-

rial fact regarding whether Perry's alleged sudden stopping of the vehicle constituted a negligent act. The only evidence of the bus's speed near the time of plaintiff's ejection from her wheelchair shows that Perry was driving within the posted 35-miles-per-hour speed limit. However, the record does not specify with certainty at what moment or within what distance from the yellow traffic control light Perry began applying the bus's brakes. While Perry estimated that she began braking within approximately three car lengths of the traffic signal, I conclude that an inference of negligence reasonably arises from the fact that Perry's braking of the bus at a traffic signal light was sudden enough to dislodge plaintiff from her wheelchair to the floor of the bus with enough force to break both her ankles. Consequently, I would permit a jury to determine whether Perry committed a negligent act that caused plaintiff's injury.

Finally, I join the majority's holding regarding plaintiff's issues on cross-appeal. As stated above, though I do believe that defendants had a duty to inform plaintiff of the availability of the shoulder restraint, defendants did not have a duty to actually apply that restraint absent a request. Additionally, while I have concluded that plaintiff adequately set forth evidence to support her claim of negligence, I do not believe that the record demonstrates sufficient evidence to maintain an action for gross negligence against Perry.