*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MARQUIS OLIVER.

---

MARTIN SHIRANDA, Personal Representative of the ESTATE OF MARQUIS OLIVER,

      Plaintiff-Appellant,

v

COUNTY OF INGHAM,

      Defendant-Appellee.

UNPUBLISHED
August 22, 2024

No. 365337
Ingham Circuit Court
LC No. 22-000422-NO

---

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Plaintiff, the personal representative of the Estate of Marquis Oliver, appeals as of right the order of the circuit court granting summary disposition to defendant, Ingham County, under MCR 2.116(C)(7), MCR 2.116(C)(8), and MCR 2.116(C)(10). Because the trial court did not err by granting summary disposition, we affirm.

## I. BASIC FACTS

In October 2019, Oliver and several other inmates were transported from the Ingham County Jail to the Ingham Circuit Court. At the time, Oliver was a maximum-security inmate, so he was placed in handcuffs, belly chains, and leg restraints. The deputy who transported Oliver to the court listened to the court hearing. During the hearing, the circuit court judge expressed concerns with Oliver's mental health and ordered that he be sent for another competency and responsibility evaluation. Following the hearing, court security and the transportation deputy took Oliver and the other inmates back to the transport van and loaded them on board.

While on route back to the jail, Oliver slipped out of his belly chains and reached through a narrow opening between a partition and the door and unlocked the passenger side sliding door. Once it was unlocked, Oliver opened the door. The deputy noticed that something was amiss when

a light came on indicating that the door was ajar. Through the rear-review mirror he saw Oliver standing in the doorway. Oliver smiled at him and then stepped out. At the time, the vehicle was travelling approximately 65 miles per hour. Oliver died as a result of injuries he sustained after exiting the vehicle. A subsequent investigation into the incident revealed that the van's rear door locks had not been disabled so as to prevent them from being opened from the inside. Additionally, unlike other transport vans used to transport inmates housed at the Ingham County jail, there was no containment cage in the van's passenger compartment.

Oliver's estate initially filed a negligence action against several employees of the Ingham County Sherriff's Office, alleging that their gross negligence was the proximate cause of Oliver's death. The defendants in that action moved for summary disposition, which the trial court granted. Oliver's estate appealed to this Court, which affirmed. See *Oliver Estate v Deputy Mendez*, unpublished opinion per curiam of the Court of Appeals, issued March 23, 2023 (Docket No. 360533).

In the meantime, Oliver's estate filed the instant action, alleging negligence in the operation of the transport van and a violation of Oliver's constitutional protections against unreasonable searches and seizures, Const 1963, art 1, § 11, and against cruel or unusual punishment, Const 1963, art 1, § 16. As relevant to the issues raised on appeal, Ingham County moved for summary disposition on the negligence claim, arguing that the estate could not prove the applicability of the motor-vehicle exception, MCL 691.1405, under the governmental tort immunity liability act (GTLA), MCL 691.1401 *et seq*. Alternatively, Ingham County asserted that the estate was barred from recovery because Oliver's "wrongful conduct" had caused his death. The trial court agreed and entered an order dismissing the estate's complaint. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Oliver's estate argues that the trial court erred by granting summary disposition in favor of Ingham County. We review de novo a trial court's grant of summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### B. ANALYSIS

"Except as otherwise provided, the [GTLA] broadly shields and grants to governmental agencies immunity from tort liability when an agency is engaged in the exercise or discharge of a governmental function." *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Governmental agencies may only be held liable under the GTLA "if a case falls into one of the enumerated statutory exceptions." *Id*. at 392. At issue in this case is the motor-vehicle exception set forth in MCL 691.1405, which states: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by an officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ."

In *Chandler v Muskegon Co*, 467 Mich 315, 320-321; 652 NW2d 224 (2002), our Supreme Court determined that, as used in MCL 691.1405, " 'operation' refers to the ordinary use of the vehicle *as* a motor vehicle, namely, driving the vehicle." Driving is not, however, the only use

-2-

that constitutes "operation." Rather, the *Chandler* Court clarified that the phrase " 'operation of a motor vehicle' encompasses activities that are directly associated with the driving of a motor vehicle." *Id*. at 321. Thereafter, in a binding order,[1] the Supreme Court clarified that operation of a motor vehicle also included the "loading and unloading of passengers" on a shuttle bus." *Martin v Rapid Inter-Urban Transit Partnership*, 480 Mich 936, 936 (2007).

Here, Oliver was injured as a result of the operation of the transport van as a motor vehicle. That is, the transportation deputy was engaging in the operation of the vehicle when he loaded Oliver and the other inmates into the vehicle and when he was driving it from the courthouse to the jail. A determination that the vehicle was being operated as a motor vehicle, however, does not end our inquiry. Indeed, Oliver's estate must also show that the operation of the motor vehicle was negligent. We conclude that, on the record before this Court, it cannot show negligent operation.

The record is devoid of any evidence that the transportation deputy's driving of the vehicle was negligent. Instead, Oliver's estate asserts that negligence arose from his decision to load Oliver into the transportation van because the van was not secure and because the transportation deputy was aware that Oliver had mental-health issues. We disagree.

Oliver's estate first directs this Court to evidence that the van was unsecure because it lacked a containment cage and the rear-door locking mechanism had not been disabled to prevent the doors from being unlocked from the inside. In support, the estate directs this Court to *Wood v Detroit*, 323 Mich App 416, 421; 917 NW2d 709 (2018) for the proposition that the decision to drive a defective vehicle can constitute negligent operation of that vehicle for purposes of the motor-vehicle exception to the GTLA. In *Wood*, the defendant was driving a van at 20 to 25 miles per hour when the driver's side wheel came off and struck a pedestrian. *Id*. at 418. The *Wood* Court determined that the vehicle was operating as a motor vehicle and that negligence was a question for the jury because there was evidence that "allows for a reasonable inference that, before the wheel fell off the van, the tire would have been wobbling noticeably." *Id*. at 421-423. In *Wood*, the defect in the vehicle—the absence of lug nuts on a wheel—directly interfered with the ability to operate, i.e., drive the van. Here, the choice to use a van without a containment cell or a disabled locking mechanism is unrelated to the operation of the motor vehicle as a motor vehicle. Indeed, the unsecured nature of the vehicle existed independently of whether the vehicle was being operated as a motor vehicle. Accordingly, the transportation deputy's decision to use an unsecured van is unrelated to the operation of the van as a motor vehicle. Any negligence in the selection of the vehicle, therefore, does not constitute negligent operation of a motor vehicle as a motor vehicle.

Next, the estate maintains that the overall decision to load Oliver into the vehicle was negligent operation of a motor vehicle because the transportation deputy knew that Oliver was volatile and unable to control himself. The estate points to evidence indicating that the transportation deputy was aware of Oliver's mental condition because he listened in on the court hearing, which allowed him to hear the circuit court judge suggest that Oliver was a "mentally ill

---

[1] Orders from our Supreme Court are binding if they are a final disposition of an application containing a concise statement of the applicable facts and the reason for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

person who isn't understanding" and ordered that he undergo a psychological evaluation. Additionally, the transportation deputy had previously transported Oliver to the forensic center, which is where inmates with "mental problems" were taken, and he was aware that Oliver's self-harming behavior of scratching his arms was becoming more aggressive. Finally, the estate points out that the court officer had advised that Oliver was agitated and kept knocking on the cell door while he was awaiting his hearing before the circuit court. The estate argues that the above, taken together, show that the deputy acted negligently by loading Oliver into the unsecured van without the aid of another deputy while secured vans were available for the transport.

The evidence does not reflect that the transportation deputy was negligent in loading Oliver into the vehicle. To be sure, at the time he was loaded into the vehicle, he was restrained by handcuffs, a belly chain, and leg restraints. Further, although the locking mechanism was not disabled, it was also not easily accessible to the inmates. The record reflects that after Oliver escaped the chains, he had to reach around a partition in order to unlock the door. There was no indication that he would—or could—escape from his belly chains, unlock the door, and then step out while the vehicle was moving. Stated differently, Oliver's injuries did not "result from" the negligent operation of a motor vehicle. Instead, his injuries were the result of his jumping from the van after manipulating his restraints to the extent where he could maneuver himself to unlock and open the door. See *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432; 824 NW2d 318 (2012) (holding that the motor-vehicle exception did not apply to a passenger injured when she was ejected from her wheelchair when a bus driver applied the brakes because the passenger was not injured during the loading or unloading process). Given that the estate cannot establish that there was negligence in either the driving of the vehicle or of the loading of Oliver into the vehicle, i.e., the two acts that constitute operation of a motor vehicle in this case, the trial court did not err by concluding that summary disposition was warranted.[2]

Affirmed. No taxable costs are awarded. MCR 7.219(A).

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michelle M. Rick

---

[2] Given our resolution, we decline to consider whether the trial court also properly granted summary disposition on the basis of the wrongful-conduct rule.