*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAYYDEAN JOFFERION-BISHOP,

        Plaintiff-Appellee,

v

CHRISTOPHER BANKS and REVIVE
TRANSPORT, LLC,

        Defendants-Appellees,
and

CITY OF DETROIT and JAMES RAYFORD
DODD,

        Defendants-Appellants,
and

DETROIT DEPARTMENT OF
TRANSPORTATION,

        Defendant.

UNPUBLISHED
December 15, 2025
1:42 PM

No. 372571
Wayne Circuit Court
LC No. 23-007671-NI

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendants-appellants City of Detroit and James Rayford Dodd (collectively, appellants) appeal as of right the trial court's order denying appellants' motion for partial summary disposition that was based on governmental immunity. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand this matter for entry of an order granting summary disposition with respect to the claim against Dodd individually because that claim is barred by governmental immunity.

## I. BACKGROUND

This case arises out of a collision between a city bus and a semi-truck. At approximately 6:30 a.m. on October 31, 2022, a semi-truck driven by defendant-appellee Christopher Banks[1] collided with a city bus driven by defendant-appellant James Dodd at the intersection of Michigan Avenue and Central Street in the city of Detroit. The bus driven by Dodd was traveling east on Michigan as it approached the intersection, and the semi-truck driven by Banks was traveling west on Michigan as it approached the intersection from the opposite direction. Banks was driving the cab section by itself and was not pulling a trailer. He turned left onto Central in front of the bus, and the bus struck the passenger side of the semi-truck. At the time of the crash, it was dark outside, and the road was wet from rain.

At the location of the accident, Michigan Avenue contains five lanes, which consist of two lanes of traffic for direction of travel and a center left-turn lane. There is no median or physical divider between the lanes of opposing traffic. The intersection is controlled by a traffic light, but there is not a specific left-turn signal.

Banks generally described the accident as follows:

I was coming up Michigan Avenue. I came up to a light on Michigan Avenue and Central with my left tum signal on to turn. The light was red at the time, I think, but it -- I went to go make my turn. There was a -- the bus was coming up Michigan in the opposite direction that I was going. The bus had their turn signal on, so I thought they were gonna be making a left-hand turn, so I commenced to make my left-hand turn. The bus went straight and T-boned my tractor.

Banks testified that he was in the left-turn lane as he approached the intersection and that there were no vehicles ahead of him in the left-turn lane. The light was red as he approached the intersection, and the light turned green after he had stopped. According to Banks, the electronic data stored by the truck showed that Banks came to a complete stop immediately before the crash and that he was traveling 8.6 miles per hour at the time of the crash.

Banks testified in more detail as follows at his deposition:

Q. And once the light turned green, what happened next?

A. I made my turn. The bus was coming with his left signal on. I made my turn. The bus did not turn.

Q. Okay. What lane was the bus in?

A. The bus was in the left lane.

Q. In the left turn lane?

[1] Banks was employed as a truck driver by defendant-appellee Revive Transport.

*A.* I didn't look specifically at the area to -- after the accident to see, but he was in the lane. So if I'm in the lane right here on the left (indicating), he was in the lane immediately next to my lane.

*Q.* So let me ask you this: Was the bus directly in front of you, like straight across the intersection from you, in the –

*A.* I don't recall.

*Q.* So if you had gone straight –

*A.* I think if I would have went straight, I don't think I would have ran into him head-on.

*Q.* Thank you. That was my question. I just want to make sure I get it out so the record's clear. If you were in the left turn lane and you had driven straight through the intersection and not left your lane, you don't believe you would have struck the bus?

*A.* I don't believe so.

*Q.* So you believe he was in a different lane than that?

*A.* In a different lane than what?

*Q.* Than the left turn lane that you were in. He wasn't in the same left turn lane on the other side of the intersection?

*A.* No, I don't think so.

*Q.* So was the bus to your left or your right-hand side?

*A.* The bus would have been to the left of me.

Banks further testified:

*Q.* Okay. Did you notice if that bus had changed lanes at all prior to the crash?

*A.* I'm not sure. I just know I saw his turn signal. He was far enough back to where he didn't have to stop at the light. The light turned green before he got up to the intersection, and I turned because he had his left tum signal on.

Dodd also described the circumstances of the accident from his perspective in his deposition testimony. He indicated that he was driving in the through lane immediately next to the left-turn lane. Dodd then testified as follows:

The accident happened, I was riding east on Michigan. The light was red way before I got to the intersection. It turned green, so I didn't have to stop. So I

-3-

proceeded through the intersection when the driver of the truck turned in front of me. I didn't even have time to blow the horn.

And he was making a -- he was headed east -- he was headed westbound in the left lane to turn south, and he turned in front of me. He was headed west to make a left turn going southbound, and he just pulled -- I was already in the intersection, and he pulled right in front of me.

Dodd stated that he applied the brakes and that the front of the bus hit the "[c]enter" of the semi-truck "around the gas tank, that external gas tank." Dodd did not recall seeing a turn signal from the semi-truck, but he knew that the truck was in the left-turn lane. Dodd also testified that he did not engage his own turn signals before the accident because he was going to proceed straight through the intersection. According to Dodd, he had last used his left-turn signal about 5 to 10 miles before the location of the accident. He stated that the speed limit was 35 miles per hour and that he had been traveling between 30 and 35 miles per hour before the collision. Dodd also testified that the semi-truck was stopped at the red light before Dodd entered the intersection, that the semi-truck turned in front of the bus, and that the semi-truck moved 10 to 15 feet from the point where it had been stopped to the point of impact. The parties do not appear to dispute that the video from the bus stopped recording before the accident occurred and that there is no video showing the collision.

Plaintiff was the only passenger on the bus at the time of the accident. Plaintiff testified that she did not see the semi-truck before the collision, but she "heard a big bang." She was sitting "[t]owards the back of the bus, in the middle by the back door." Plaintiff stated that when the collision occurred, she was sitting in her seat and her "body went all the way to the left and [her] knees hit the front of the -- the railing." Plaintiff incurred injuries to her knees, lower back, and neck.

Plaintiff filed this lawsuit against Banks, Revive Transport, and the city of Detroit, alleging claims of negligence against Banks; negligence, owner's liability, and vicarious liability against Revive Transport; negligent hiring, retention, and supervision against Revive Transport; and first-party no-fault benefits against the city. After Banks and Revive Transport filed a notice of non-party at fault, plaintiff filed a first amended complaint adding Dodd and the Detroit Department of Transportation (DDOT) as parties. In her first amended complaint, plaintiff added a claim of negligence and/or gross negligence against Dodd, as well as a claim of negligence and owner's liability against the city and the DDOT pursuant to the motor vehicle exception to governmental immunity. The cause of action against the DDOT was dismissed solely with respect to that party by stipulation of the parties.

Appellants filed a motion for partial summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that there was no question of fact that Dodd was not negligent or grossly negligent and that plaintiff's negligence claim against the city and gross negligence claim against Dodd must be dismissed as a matter of law.

In response, plaintiff argued that there was conflicting evidence regarding Dodd's negligence or gross negligence that precluded summary disposition. Plaintiff contended that

although Dodd denied that his turn signal was active, Banks testified that the bus's left-turn signal was on and led him to believe the bus was turning left, thereby making Dodd at fault for the crash.

Banks and Revive Transport similarly argued that there was a question of fact whether the bus's turn signal was on and that the question was material because Banks testified that he relied on the turn signal in deciding that he could make his turn. Banks and Revive Transport contended that a left-turning motorist could acquire the right-of-way over oncoming traffic when there is a green light and that, at a minimum, Dodd could be found to be comparatively negligent along with Banks.

The trial court denied the motion for partial summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's summary disposition ruling is reviewed de novo. *Mack v Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002). The "applicability of governmental immunity is a question of law that this Court reviews de novo." *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018).

A motion for summary disposition premised on governmental immunity may be brought under MCR 2.116(C)(7) or (C)(10). *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014). Summary disposition is justified under MCR 2.116(C)(7) if "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law . . . ." When reviewing a motion under this subrule, the "contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008) (quotation marks and citation omitted).

Summary disposition is appropriate under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). Under this subrule, the evidence submitted by the parties is reviewed in the light most favorable to the nonmoving party. *Odom*, 482 Mich at 466-467. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt*, LLP, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. ANALYSIS

The present appeal involves only third-party negligence claims against appellants and does not implicate plaintiff's claim for first-party no-fault benefits. See *Atkins v Suburban Mobility Auth for Regional Transp*, 492 Mich 707, 718; 822 NW2d 522 (2012) ("A third-party tort claim is distinct from a claim for first-party benefits because a third-party tort claim involves an adversarial process in which the plaintiff must prove fault in order to recover.").

Turning first to the claim against the city, governmental agencies in Michigan are generally "statutorily immune from tort liability." *Id*. at 714. Section 7 of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, provides in relevant part that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1).

There does not appear to be any dispute in this case that the city is a governmental agency and was engaged in the exercise of a governmental function for purposes of the GTLA. However, pursuant to the motor-vehicle exception, "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. Thus, if plaintiff's injuries were caused by the "negligent operation" of a motor vehicle, then the city could be liable, but the city is immune from liability if there was no evidence of negligence by its employee. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 436; 824 NW2d 318 (2012). The issue on appeal, as framed by the parties, is whether the trial court correctly determined that there was a genuine question of material fact regarding whether Dodd was negligent in his operation of the city bus for purposes of MCL 691.1405. "In order to establish a prima facie negligence claim, a plaintiff must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Seldon*, 297 Mich App at 433.

Several statutes address the responsibilities of motorists traveling in opposing directions when they meet at intersections controlled by traffic lights. The meanings of the colored lights for traffic control signals are discussed in MCL 257.612(1). MCL 257.612(1)(a) provides as follows:

> If the signal exhibits a green indication, vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at that place prohibits either turn. Vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians and bicyclists lawfully within the intersection or an adjacent crosswalk at the time the signal is exhibited.

Furthermore, MCL 257.647(1) discusses the obligations of a driver intending to turn at an intersection:

> (1) The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> \* \* \*
>
> (b) Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line in a manner as not to interfere with the progress of any streetcar, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered.
>
> \* \* \*
>
> (e) Local authorities in their respective jurisdictions may cause pavement markers, signs, or signals to be placed within or adjacent to intersections and thereby require and direct that a different course from that specified in this section be traveled by vehicles turning at an intersection. When markers, signs, or signals are so placed, a driver of a vehicle shall not turn a vehicle at an intersection other than as directed and required by those markers, signs, or signals.

As specifically relevant to the circumstances of the present case, MCL 257.650(1) provides as follows:

The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to a vehicle approaching from the opposite direction which is within the intersection or so close to the intersection as to constitute an immediate hazard; but the driver, having so yielded and having given a signal when and as required by this chapter, may make the left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn. At an intersection at which a traffic signal is located, a driver intending to make a left turn shall permit vehicles bound straight through in the opposite direction which are waiting a go signal to pass through the intersection before making the turn.

Finally, MCL 257.648(1) states that the "operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety and shall give a signal as required in this section."

In Michigan, it is within the court's discretion whether to accept a penal statute as the standard of care in a civil negligence action. *Zeni v Anderson*, 397 Mich 117, 130, 143; 243 NW2d 270 (1976); *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 87; 393 NW2d 356 (1986). The applicable test is whether:

1. the statute is intended to protect against the result of the violation;

2. the plaintiff is within the class intended to be protected by the statute; and

3. the evidence will support a finding that the violation was a proximate contributing cause of the occurrence. [*Klanseck*, 426 Mich at 87 (quotation marks and citation omitted).]

If a court adopts a penal statute as the standard of care, evidence that the statute was violated creates a rebuttable presumption of negligence, allowing a jury to infer negligence from the statutory violation, after which the jury must still also make a proximate cause determination. *Id*. at 86; *Zeni*, 397 Mich at 143. Moreover, the "favored driver" with the right of way still retains the "duty to exercise reasonable care under the circumstances." *McGuire v Rabaut*, 354 Mich 230, 235; 92 NW2d 299 (1958). "It is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Rowland v Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2025); slip op at 5 (quotation marks and citation omitted). "No hard and fast rule exists that speed or statutory right of way is determinative of negligence as a matter of law. Each driver must use such care as is commensurate with obvious conditions." *Bugbee v Fowle*, 277 Mich 485, 490; 269 NW 570 (1936) (citations omitted).

Here, appellants maintain that there is no evidence that Dodd was negligent because he had the right of way as the vehicle proceeding straight through the intersection on a green light, and Banks had a duty to yield to the bus before proceeding with making a left turn. Moreover, appellants argue that it is not negligent for a driver to travel straight through an intersection with a

turn signal activated because there is no statute prohibiting such a maneuver and because Banks still had a duty to ensure that the intersection was actually clear before he proceeded with his turn.

However, there was conflicting testimony about whether Dodd's left turn signal was engaged as he approached the intersection and proceeded to travel straight through the intersection. Although Dodd denied that his turn signal was active, Banks testified that he saw the turn signal, which led him to believe that the bus was also going to turn left such that Banks was clear to proceed with his simultaneous left turn.

The question thus becomes whether an improper use of a turn signal contrary to the driver's actual direction of travel, if established as true, could constitute negligence. As an initial matter, even assuming that Dodd had the statutory right of way as the through driver pursuant to the traffic signal controlling the intersection, and acknowledging that he was "entitled to assume that subordinate drivers will yield him the right of way" and was "not bound to anticipate unlawful or negligent acts on their part," the "favored driver" nonetheless "is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his 'right' simply because he is the favored driver." *McGuire*, 354 Mich at 234-235.

Furthermore, because a motorist always has a duty to exercise reasonable care in the course of driving, *McGuire*, 354 Mich at 235; *Rowland*, ___ Mich App at ___; slip op at 5; *Bugbee*, 277 Mich at 490, and because penal statutes in the motor vehicle code are not the sole or de facto source for defining the standard of care applicable to motorists, *Klanseck*, 426 Mich at 87; *Zeni*, 397 Mich at 130, 143, appellants are incorrect in their assertion that Dodd could not have been negligent merely because there is no statute specifically prohibiting the action of driving straight through an intersection with a turn signal engaged.

Engaging a turn signal is not a meaningless gesture: motorists are required by statute to signal an intent to turn before completing a turn. See MCL 257.648(1) ("The operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety *and shall give a signal* as required in this section.") (emphasis added). A vehicle's turn signal device must "convey[] an intelligible signal or warning to other highway traffic." MCL 257.648(2). This Court has held that the purpose of this statute "is to provide notice of movements along the route that could affect other motorists." *People v Hrlic*, 277 Mich App 260, 266; 744 NW2d 221 (2007). The Michigan Supreme Court has also observed that "by giving a single signal a driver may thus indicate his intention of doing one of three things: either starting, stopping or turning." *Hoffman v Burkhead*, 353 Mich 47, 52; 90 NW2d 498 (1958).

Accordingly, an engaged turn signal—consistent with its reason for existence—leads other drivers to believe that the vehicle will complete the signaled action. Therefore, a driver's act of signaling an action contrary to the driver's actual intent and manifested action, such as engaging a left-turn signal at an intersection while proceeding to drive straight through the intersection, causes confusion for other drivers and falls below the standard of ordinary care and reasonable caution that an ordinarily prudent person would exercise under the same or similar circumstances.

*Rowland*, ___ Mich App at ___; slip op at 5.[2]  In this case, Banks testified that the bus had its left-turn signal on, which led Banks to believe that he could safely proceed with his left turn because the bus was also going to turn left.  The bus went straight, and the two vehicles collided.

Appellants have thus failed to show that there is no evidence, when viewed in the light most favorable to the nonmoving party, from which a trier of fact could reasonably conclude that Dodd was negligent, and appellants have therefore not demonstrated that the trial court erred by denying the motion for summary disposition with respect to the claim against the city.  *Mack*, 467 Mich at 193.

Turning to the claim against Dodd individually, the standard for governmental immunity applicable to individual employees of governmental agencies is set forth in MCL 691.1407(2).  *Seldon*, 297 Mich App at 439-440.  That statute provides as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

For purposes of the statute, "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MCL 691.1407(8)(a).

The parties in this case do not appear to contest that Dodd was an employee of a governmental agency, that the governmental agency was engaged in the exercise or discharge of a governmental function, or that Dodd was acting within the scope of his authority.  MCL 691.1407(2).  The issue is whether there is evidence that Dodd's conduct amounted to gross negligence.  MCL 691.1407(2)(c).

Although there is evidence that would support a conclusion that Dodd was negligent as previously discussed, "[e]vidence of ordinary negligence does not create a material question of

---

[2] That confusion exists regardless of what lane the vehicle is actually occupying.

fact concerning gross negligence." *Seldon*, 297 Mich App at 440 (quotation marks and citation omitted). The trial court ruled that there was a question of fact regarding gross negligence because "it may be a little premature for me to grant as to the gross negligence at this time as well, because, yeah, you're so early on I guess time will tell." The trial court relied on the conflicting testimony of the two drivers regarding the circumstances of the accident with respect to whether Dodd's turn signal was engaged such that Banks thought the bus was turning left, as well as the fact that Dodd was driving a bus in which he was responsible for transporting passengers. Banks additionally argues that the trial court reached the right result based on this same evidence, as well as Dodd's testimony suggesting that the semi-truck moved 10 to 15 feet before Dodd noticed that it was moving, by which time it was too late for Dodd to avoid the crash. Plaintiff further argues that the evidence supports the conclusion that Dodd left his turn signal on for 5 to 10 miles before reaching the intersection, which demonstrates gross negligence.

"The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was *substantially* more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999) (emphasis added). A plaintiff opposing a motion for summary disposition "must adduce proof of conduct 'so reckless as to demonstrate a substantial lack of concern for whether an injury results.' " *Id*. at 123. The gross negligence standard of care suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks," such that an objective observer could reasonably conclude "that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).

On this record, there is no evidence from which a trier of fact could reasonably conclude that Dodd *recklessly* or *willfully* disregarded precautions in a manner showing a substantial lack of care or concern for the safety of others. *Maiden*, 461 Mich at 122-123; *Tarlea*, 263 Mich App at 90. While there is evidence that could support a finding of negligence, appellees have not cited any evidence demonstrating a reckless or willful disregard for others on the part of Dodd, nor have they cited any evidence showing that Dodd was *substantially* more than negligent. *Maiden*, 461 Mich at 122-123. Accordingly, the trial court erred by denying summary disposition with respect to the individual claim against Dodd. We therefore reverse and remand this matter for the trial court to enter an order granting partial summary disposition and dismissing the individual claim against Dodd based on governmental immunity.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica

-10-