*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIA GENTRY, Personal Representative of the
ESTATE OF DELANA GENTRY,

Plaintiff-Appellee,

v

RYAN BAUGH and CITY OF DETROIT,

Defendants-Appellants,

and

MICHIGAN ASSIGNED CLAIMS PLAN,
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, EDWIN ROSS
NICHOLS, and TERNESIA MARIE WARD,

Defendants.

UNPUBLISHED
October 11, 2024
11:02 AM

No. 367862
Wayne Circuit Court
LC No. 21-007177-NI

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendants-appellants, Ryan Baugh and the city of Detroit (the city),[1] appeal as of right the trial court's order denying their motion for summary disposition under MCR 2.116(C)(7), which argued that the claims brought by plaintiff, Tia Gentry, as personal representative of the estate of Delana Gentry, are barred by governmental immunity. We affirm.

## I. BACKGROUND

This case arises out of a motor vehicle accident at around 9 p.m. on October 23, 2020, at the intersection of James Couzens Freeway and West McNichols Road in Detroit, Michigan.

---

[1] This opinion will refer to Baugh and the city collectively as "defendants."

-1-

Plaintiff's mother, Delana, was recovered from a burning home by the Detroit Fire Department and transported by EMS employees to the hospital for further treatment. Baugh drove the ambulance while others treated Delana in the back of the vehicle. As Baugh drove down James Couzens Freeway through the West McNichols Road intersection, defendant Edwin Nichols struck the ambulance, causing it to roll over.

The details of the accident are hotly contested. Baugh wrote in his report following the accident that he had a green light and that Nichols "ran a red light" at a high rate of speed,[2] causing the crash. At his deposition, Baugh testified that he could not remember the color of his light but "remember[ed] driving down James Couzens and seeing the green light." In contrast, Nichols and a witness interviewed at the scene[3] both said that Nichols had the green light. Nichols also testified that he was traveling the speed limit, which was 35 miles per hour. Baugh wrote in his report and testified at his deposition that he slowed down at the intersection, looked both ways to make sure the intersection was clear, and only proceeded after determining that it was safe to do so. Baugh's supervisor testified that, when she arrived at the scene of the accident, a witness told her that Nichols' vehicle went around stopped traffic to enter the intersection. Nichols, however, never said that he went around stopped traffic before the accident. He testified that he turned onto McNichols and was simply driving through his green light when the accident happened. Plaintiff's accident reconstructionist seemingly confirmed this—he represented that the crash data from the vehicle Nichols was driving showed that Nichols' "vehicle was traveling between 34-35 m.p.h. in the five seconds leading up to the crash . . . ." Baugh testified at his deposition that he had his lights and sirens activated, and a witness at the scene confirmed this and additionally reported that the ambulance sounded its horn before entering the intersection. Nichols, however, said that, while he heard sirens, he thought that they were the sirens of ambulances that he could see down the street in front of him, and he denied seeing any lights on the ambulance that Baugh was operating.[4] The speed that Baugh was traveling before the accident is also unclear. In his report, Baugh wrote that his speed was "55" but crossed that out and wrote "30." Then, at his deposition, Baugh said that he "couldn't put an estimate on" his speed, but "would say more than 10 miles an hour is a good estimate." When asked if he was traveling "[m]ore than 50," he said, "Probably not more than 50," and agreed that he was traveling "10 to 50, somewhere in there."

As relevant to this appeal, plaintiff brought claims against defendants alleging that Baugh was negligent or grossly negligent in his operation of the ambulance, which caused the collision in which Delana suffered a traumatic brain injury that eventually led to her death. Defendants moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiff's claims against them were barred by governmental immunity. Defendants contended that Baugh was not negligent

---

[2] Due to Baugh's handwriting, it is unclear whether he wrote that Nichols was traveling at "45 mph" or "75 mph." At a different point in the report, Baugh reported Nichols' speed as "50+."

[3] Defendant provided this Court with bodycam video of an officer investigating the accident, and the witness made the statement to the investigating officer in the video.

[4] Defendant contends on appeal that "[v]ideo taken after the accident clearly shows the lights still activated on the ambulance." The defendant's brief does not cite the video to which it is referring, but in the video provided to this Court, it is not clear that the ambulance's lights are activated.

in his operation of the ambulance and, therefore, the motor vehicle exception to governmental immunity was inapplicable. Plaintiff argued in response that there was a question of fact whether Baugh drove the ambulance reasonably and with due care and caution, i.e., whether he was negligent in his operation of the ambulance. The trial court agreed with plaintiff, holding that there were several issues of fact whether Baugh drove appropriately under the circumstances, including discrepancies in what speed Baugh was traveling, whether Nichols observed the ambulance's lights and sirens, and whether Baugh operated the ambulance safely in a way to prevent injuries. The court accordingly denied defendants' motion for summary disposition.

This appeal followed.

## II. STANDARD OF REVIEW

On appeal, defendants contest the trial court's decision denying their motion for summary disposition. Appellate courts review de novo a trial court's decision to deny a motion for summary disposition. *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 333; 999 NW2d 423 (2023). The applicability of governmental immunity and its statutory exceptions are likewise reviewed de novo. *Madbak v Farmington Hills*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364734); slip op at 3. MCR 2.116(C)(7) permits a court to dismiss an action on grounds that the action is barred by "immunity granted by law." When a defendant brings a motion for summary disposition under MCR 2.116(C)(7), this Court must accept as true the allegations in the complaint unless the defendant submits contradictory documentation. *Norman v Dep't of Transp*, 338 Mich App 141, 146; 979 NW2d 390 (2021). When deciding a motion brought under MCR 2.116(C)(7), courts must construe the evidence in the light most favorable to the nonmoving party. *Madbak*, ___ Mich App at ___; slip op at 3. "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law for the trial court to decide." *Norman*, 338 Mich App at 146-147. "If a question of fact exists, dismissal is inappropriate." *Id*. at 147.

## III. ANALYSIS

Defendants argue that the trial court erred by denying their motion for summary disposition because plaintiff failed to establish a genuine issue of material fact as to Baugh's negligent operation of an ambulance. We disagree.

The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., "affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Kozak v Lincoln Park*, 499 Mich 465, 467; 885 NW2d 443 (2016). "The GTLA provides several exceptions to this general rule, all of which must be narrowly construed." *Id*. One such exception is the motor vehicle exception in MCL 691.1405, which provides, "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any . . . employee of the governmental agency, of a motor vehicle of which the governmental agency is the owner[.]"

To establish a claim for negligence, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the defendant's breach of the duty caused damage to the plaintiff. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich

App 427, 433; 824 NW2d 318 (2012). Defendants argue that plaintiff cannot establish that Baugh breached any duty owed to plaintiff because, at all times, Baugh "followed all applicable laws and entered the intersection with his lights and sirens on."

In support of their argument, defendants principally rely on MCL 257.603(3)(b) and (c) of the Michigan Vehicle Code, MCL 257.1 *et seq*. Those subsections allow an ambulance driver to drive through a red light "after slowing down as may be necessary for safe operation," and to exceed posted speed limits "so long as he or she does not endanger life or property." MCL 257.603(3)(b) and (c). These exceptions "apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary . . . and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light[.]" MCL 257.603(4). While these exceptions, when applicable, excuse ambulance drivers from stopping at a red light or following the speed limit, it is well established that ambulance drivers may only disregard the "rules of the road" if done "in a reasonable manner that is mindful of the safety of others on the road." *Flanagin v Kalkaska Co Rd Comm*, 319 Mich App 633, 638; 904 NW2d 427 (2017). In other words, ambulance drivers can only proceed through red lights or ignore posted speed limits "after ensuring that it is, in fact, safe to do so." *Id*.

Contrary to defendants' argument, there is a question of fact whether the exceptions in MCL 257.603(3) even apply because there is a question of fact whether Baugh's ambulance's lights were flashing before the accident. See MCL 257.603(4). While Baugh and a witness said that the ambulance's lights were flashing, Nichols sharply disputed this. He insisted during his deposition that the ambulance's lights were not flashing because, if they were, he would have seen them as it was dark outside at the time of the crash.[5]

But even if the exceptions in MCL 257.603(b) and (c) applied, there remain questions of fact whether Baugh's operation of the ambulance was negligent. As this Court has explained, the applicability of statutes like MCL 257.603 "to a lawsuit arising out of a collision involving" an emergency vehicle "is minimal" because, while "[i]t might lead to the conclusion that a plaintiff could not successfully base an argument on negligence per se for a statutory violation," "it would not lead to the conclusion that the operator of the emergency . . . vehicle could not be considered negligent simply because the operator was permitted to ignore the ordinary rules of the road under the circumstances." *Flanagin*, 319 Mich App at 639. The "real question" is whether Baugh was operating the ambulance negligently. *Id*.

While Baugh testified that he slowed down and looked both ways before entering the intersection, it is unclear what speed he was going when he did so. Baugh initially wrote in his report that he was going "55," then crossed that out and wrote "30," and his deposition testimony

---

[5] As noted in footnote 4, the defendant contends on appeal that "[v]ideo taken after the accident clearly shows the lights still activated on the ambulance." As previously noted, it is unclear to what video the defendant is referring, but in the video provided to this Court, the ambulance's lights are not clearly flashing. Regardless, evidence that the ambulance's lights were flashing after the accident does not clearly establish that the ambulance's lights were flashing when it proceeded into the intersection on a red light, so a question of fact would still remain.

-4-

about his speed was even less clear—he said he was going somewhere between "10 and 50." Construing this evidence in the light most favorable to plaintiff, a trier of fact could reasonably conclude that Baugh did not reduce his speed enough to ensure that cross traffic was clear before proceeding through a red signal. That is, a trier of fact could conclude that Baugh did not ensure that it was safe to proceed through the red light before doing so (despite reducing his speed), and was thus negligent in his operation of the ambulance. See MCL 257.603(b) (stating that an emergency vehicle can proceed through a red signal "only after slowing down as may be necessary for safe operation"); *Flanagin*, 319 Mich App at 638 (explaining that emergency vehicles can only ignore posted rules "after ensuring that it is, in fact, safe to do so").

This conclusion is further buttressed by Nichols' testimony about what he was doing before the accident—he said that he was driving the speed limit down McNichols and proceeded through a green light when the ambulance suddenly appeared in front of him. This is supported by evidence from plaintiff's accident reconstructionist, who represented that the crash data from the vehicle Nichols was driving showed that Nichols' "vehicle was traveling between 34-35 m.p.h. in the five seconds leading up to the crash . . . ." If Nichols was indeed driving within the speed limit before the accident and merely proceeded through a green light, and Baugh simply failed to see him, then a trier of fact could reasonably conclude that Baugh did not ensure that it was, in fact, safe to proceed through the red light before doing so, and was thus negligent in his operation of the ambulance. See *id*.[6]

Defendants contend that this case is analogous to the unpublished decision of this Court in *Ferriole v City of Detroit*, unpublished per curiam opinion of the Court of Appeals, issued July 28, 2022 (Docket No. 358794), but it clearly is not. Setting aside the factual differences between this case and *Ferriole*, the most significant difference between the two cases is the type of evidence submitted in *Ferriole*. There, this Court did not rely solely on testimony or documentary evidence to determine the circumstances of the crash; rather, several factual disputes were resolved by dashcam video of the accident. The dashcam video confirmed that (1) the emergency vehicle's lights and sirens were activated, (2) the emergency vehicle slowed down before reaching the intersection, (3) cars were stopped at the intersection before the emergency vehicle proceeded through a red light, and (4) the plaintiff's car emerged from behind the stopped vehicles and entered the intersection, where it was hit by the emergency vehicle. *Id*. at 1-2; 10-11. Here, unlike in *Ferriole*, the disputes in the evidence cannot be resolved by reviewing a video of what happened.

---

[6] Defendants contend that Nichols alone was negligent and that his negligence caused the accident. On the current record, there are far too many questions of fact to resolve that argument as a matter of law. That said, defendants remain free to argue that Nichols was negligent, and that his negligence caused or contributed to the accident. See *Placek v City of Sterling Hts*, 405 Mich 638, 671-672; 275 NW2d 511 (1979) (explaining that "the driver traveling on a through street, as against an emergency vehicle, has a right to cross the intersection unless, by the reasonable exercise of the senses of sight and hearing, he or she should have noticed or heard warning to the contrary").

Instead, we must rely on testimony, witness statements, and reports about what may or may not have occurred. That evidence is rife with discrepancies, as explained throughout this opinion.

In sum, as the record currently stands, there are genuine issues of material fact whether Baugh was negligent in his operation of the ambulance. The trial court accordingly did not err by denying defendants' motion for summary disposition under MCR 2.116(C)(7) on grounds that plaintiff's claims were barred by governmental immunity.[7]

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[7] We offer no opinion on whether Baugh was grossly negligent in his operation of the ambulance because the issue was not raised by defendants on appeal. Their brief makes no reference to the pertinent statute, MCL 691.1407(2)(c), or caselaw discussing the statute; does not discuss the standard for assessing gross negligence; and does not argue that Baugh's operation of the ambulance did not rise to the level of gross negligence.